**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | | |
|---|---|---|
| Q.T., *et al.*, | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | CASE NO. 1:19-cv-01285 (RJA/JFA) |
| | * | |
| FAIRFAX COUNTY SCHOOL BOARD, *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

---

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Kevin E. Byrnes, VSB No. 47623
Fluet Huber + Hoang, PLLC
1751 Pinnacle Drive
10th Floor
Tysons, Virginia 22102
T: (703) 590-1234
F: (703) 590-0366
kbyrnes@fhhfirm.com

Regina Kline (*pro hac vice*)
Eve L. Hill (*pro hac vice*)
Sharon Krevor-Weisbaum (*pro hac vice*)
Anthony J. May (*pro hac vice*)
BROWN, GOLDSTEIN & LEVY, LLP
120 East Baltimore Street, Suite 1700
Baltimore, Maryland 21202
T: (410) 962-1030
F: (410) 385-0869
RKline@browngold.com
EHill@browngold.com
SKW@browngold.com
AMay@browngold.com

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

STATEMENT OF FACTS .................................................................................................. 3

LEGAL STANDARD .......................................................................................................... 5

ARGUMENT ...................................................................................................................... 5

I.     THIS COURT HAS SUBJECT MATTER JURISDICTION OVER
      PLAINTIFFS' CLAIMS AND CORRESPONDING RELIEF. .......................................... 5

     A.    Individual Plaintiffs are not required to exhaust under *Fry v.
         Napoleon Community School*, and, even if they were, exceptions
         apply ............................................................................................................ 5

         1.    *Fry* does not require exhaustion under the circumstances of
             this case. ....................................................................................... 6

             a.    Plaintiffs would have viable claims if similar
                 conduct occurred at other public facilities. .................... 7

             b.    An adult visitor could bring similar claims ................... 10

             c.    Plaintiffs have not historically invoked IDEA
                 procedures regarding restraint and seclusion. ............... 11

         2.    Even if *Fry* required exhaustion, the Fourth Circuit
             recognizes exceptions that apply in this case. .............................. 12

             a.    Futility .......................................................................... 13

             b.    Failure to notify ........................................................... 15

             c.    Severe harm .................................................................. 16

     B.    Both Individual and Organizational Plaintiffs have standing. .............................. 17

         1.    Individual Plaintiffs are entitled to the full panoply of rights
             under Title II of the ADA and Section 504 ................................. 17

         2.    Organizational Plaintiffs have alleged facts sufficient to
             establish both organizational and representational standing .................... 19

             a.    Organizational standing ................................................ 20

             b.    Representational standing ............................................. 22

II.    PLAINTIFFS HAVE SUFFICIENTLY ALLEGED CLAIMS UNDER
      THE ADA, SECTION 504, AND SECTION 1983 FOR
      CONSTITUTIONAL VIOLATIONS. ............................................................................ 23

     A.    Plaintiffs plausibly allege violations of the ADA and Section 504,
         entitling them to relief and full discovery. .......................................... 24

         1.    Plaintiffs allege facts leading to a reasonable inference that

Defendants have violated Title II of the ADA and Section 504......................................................................................................... 24

2.      Organizational Plaintiffs are entitled to all relevant discovery. ............................................................................................... 27

B.      Plaintiffs have sufficiently alleged claims under Section 1983 for violations of the Fourth and Fourteenth Amendments. ........................................ 28

III.    DR. BRABRAND AND MS. JOHNSON ARE PROPER DEFENDANTS AND IT WOULD BE PREMATURE TO DISMISS THEM AT THIS STAGE........................................................................................................................ 30

CONCLUSION....................................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**

*A Soc'y Without A Name v. Virginia,*
   655 F.3d 342 (4th Cir. 2011) ............................................... 17

*A.H. ex rel. H.C. v. Craven Cty. Bd. of Educ.,*
   No. 4:16-cv-282, 2017 WL 3493612 (E.D.N.C. Aug. 14, 2017) ......................................... 16

*A.S. ex rel. Leonel S. v. Catawba Cty. Bd. of Educ.,*
   No. 5:11CV27-RLV, 2011 WL 3438881 (W.D.N.C. Aug. 5, 2011) ..................................... 16

*Abraham P. v. Los Angeles Unified Sch. Dist.,*
   No. CV 17-3105-GW (FFMX), 2017 WL 4839071 (C.D. Cal. Oct. 5, 2017) ........................ 9

*Adams v. Montgomery College (Rockville),*
   834 F. Supp. 2d 386 (D. Md. 2011) ...................................................................... 18

*Alexander v. Choate,*
   469 U.S. 287 (1985) ........................................................ 25

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ........................................................ 5

*Baird v. Rose,*
   192 F.3d 462 (4th Cir. 1999) ................................................ 24, 26, 27

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ........................................................ 5

*Beth V. by Yvonne V. v. Carroll,*
   87 F.3d 80 (3d Cir. 1996) .................................................. 13

*Boggs v. Krum Indep. Sch. Dist.,*
   376 F. Supp. 3d 714 (E.D. Tex. 2019) .................................................. 17

*Bounds v. Smith,*
   430 U.S. 817 (1977) ........................................................ 19

*Bryant Woods Inn, Inc. v. Howard Cty. Md.,*
   911 F. Supp. 929, *aff'd,* 124 F.3d 597 (4th Cir. 1997) .......................................... 27

*Califano v. Yamasaki,*
   442 U.S. 682 (1979) ........................................................ 19

*Capital One Fin. Corp. v. Kirkpatrick,*
   No. CIV.A 3:07CV354-HEH, 2007 WL 2247599 (E.D. Va. Aug. 1, 2007) ........................ 27

*Carter v. Morris,*
   164 F.3d 215 (4th Cir.1999) ................................................ 28–29

*Chapman v. Pier 1 Imports (U.S.) Inc.,*
   631 F.3d 939 (9th Cir. 2011) .............................................. 20

*Christopher W. v. Portsmouth Sch. Comm.,*
   877 F.2d 1089 (1st Cir. 1989) ............................................. 15

*City of Canton v. Harris*,
    489 U.S. 378 (1989) ...................................................................................... 24, 30

*Consolidation Coal Co. v. Borda*,
    171 F.3d 175 (4th Cir. 1999) ............................................................................. 15

*Constantine v. Rectors & Visitors of George Mason Univ.*,
    411 F.3d 474 (4th Cir. 2005) ........................................................... 19, 24, 26, 28

*Council of Parent Attorneys & Advocates, Inc. v. DeVos*,
    365 F. Supp. 3d 28 (D.D.C. 2019) ..................................................................... 23

*Daniels v. Arcade, L.P.*,
    477 F. App'x 125 (4th Cir. 2012) ...................................................................... 17

*Dayton Bd. of Ed. v. Brinkman*,
    433 U.S. 406 (1977) ........................................................................................... 19

*Doucette v. Georgetown Pub. Sch.*,
    936 F.3d 16 (1st Cir. 2019) ............................................................................... 10

*Edwards v. Murphy-Brown, LLC*,
    760 F. Supp. 2d 607 (E.D. Va. 2011) ................................................................. 5

*Equal Rights Ctr. v. Camden Prop. Tr.*,
    No. CIV. PJM07-2357, 2008 WL 8922896 (D. Md. Sept. 22, 2008) ............. 26–27

*Equal Rights Ctr. v. Equity Residential*,
    483 F. Supp. 2d 482 (D. Md. 2007) ................................................................... 22

*Erickson v. Bd. of Govs of State Colleges & Univs. For Ne. Ill. Univ.*,
    207 F.3d 945 (7th Cir. 2000) .......................................................................... 2, 25

*Estate of Robert Ethan Saylor v. Regal Cinemas, Inc.*,
    No. WMN-13-3089, 2016 WL 4721254 (D. Md. Sept. 9, 2016) ........................ 11

*Fry v. Napoleon Community School*,
    137 S. Ct. 743 (2017) ................................................................................... passim

*Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ.*,
    655 Fed. App'x. 423 (6th Cir. 2016) ................................................................... 6

*GM by & Through Mason v. Lincoln Cty. Sch. Dist.*,
    No. 6:16-CV-01739-JR, 2017 WL 2804996 (D. Or. Apr. 21, 2017) ............... 9–10

*Goldstein v. Costco Wholesale Corp.*,
    278 F. Supp. 2d 766 (E.D. Va. 2003) ................................................................ 21

*Goodman v. Praxair, Inc.*,
    494 F.3d 458 (4th Cir. 2007) .............................................................................. 6

*Gorman v. Bartch*,
    152 F.3d 907 (8th Cir. 1998) ............................................................................. 11

*Graham v. Friedlander*,
    334 Conn. 564 (2020) ................................................................................... 10, 11

*Havens Realty Corp. v. Coleman*,
455 U.S. 363 (1982)..................................................................................... 20, 21

*Henrietta D. v. Bloomberg*,
331 F.3d 261 (3d Cir. 2003).............................................................................. 27

*Hinson v. Norwest Fin. S.C., Inc.*,
239 F.3d 611 (4th Cir. 2001) ........................................................................... 19

*Humane Soc'y of the U.S. v. Hodel*,
840 F.2d 45 (D.C. Cir. 1988)............................................................................ 23

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977)........................................................................................ 22

*Hurd v. Clark County School District*,
No. 216CV02011GMNNJK, 2017 WL 4349231 (D. Nev. Sept. 29, 2017)................... passim

*J.L. ex rel. Leduc v. Wyo. Valley W. Sch. Dist.*,
722 F. App'x 190 (3d Cir. 2018) ......................................................................... 9

*J.M. v. Francis Howell Sch. Dist.*,
850 F.3d 944 (8th Cir. 2017) ......................................................................... 9, 10

*J.S., III by & through J.S. Jr. v. Houston Cty. Bd. of Educ.*,
877 F.3d 979 (11th Cir. 2017) .......................................................................... 11

*Jones v. Bock*,
549 U.S. 199 (2007) .......................................................................................... 6

*Jones v. Welham*,
104 F.3d 620 (4th Cir. 1997) ............................................................................ 29

*K.G. by & through Gosch v. Sergeant Bluff-Luton Cmty. Sch. Dist.*,
244 F. Supp. 3d 904 (N.D. Iowa Mar. 23, 2017) ............................................. 10, 11

*Kentuckians for Commonwealth, Inc. v. Rivenburgh*,
317 F.3d 425 (4th Cir. 2003) ........................................................................... 19

*King v. Sebelius*,
997 F. Supp. 2d 415 (E.D. Va. 2014) ................................................................ 20

*Koster v. Frederick Cty. Bd. of Educ.*,
921 F. Supp. 1453, 1456 (D. Md. 1996) ....................................................... 12, 13

*Lane v. Holder*,
703 F.3d 668 (4th Cir. 2012) ........................................................................... 21

*Lawton v. Success Academy Charter Schools, Inc.*,
323 F. Supp. 3d 353 (E.D.N.Y. 2018) ............................................................. 9, 11

*League of United Latin Am. Citizens - Richmond Region Council 4614 v. Pub.
Interest Legal Found.*,
No. 1:18-CV-00423, 2018 WL 3848404 (E.D. Va. Aug. 13, 2018) ....................... 19

*Lewis v. Casey*,
518 U.S. 343 (1996)........................................................................................ 19

*Love-Lane v. Martin,*
   355 F.3d 766 (4th Cir. 2004) ......................................................................... 30

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992) .................................................................................... 17

*Lytle v. Griffith,*
   240 F.3d 404 (4th Cir. 2001) ......................................................................... 30

*McQueen v. Colorado Springs Sch. Dist. No. 11,*
   488 F.3d 836 (10th Cir. 2007) ........................................................................ 6

*Milligan v. City of Newport News,*
   743 F.2d 227 (4th Cir. 1984) ......................................................................... 29

*MM ex rel. DM v. Sch. Dist. of Greenville Cty.,*
   *303 F. 3d 523 (4th Cir. 2002)* ....................................................................... 13

*Monell v. Dep't of Soc. Servs.,*
   436 U.S. 658 (1978) ........................................................................... 24, 28, 29

*Moseke v. Miller & Smith, Inc.,*
   202 F. Supp. 492 (E.D. Va. 2002) ............................................................. 22, 28

*Mosely v. Bd. of Educ.,*
   434 F.3d 527 (7th Cir. 2006) .......................................................................... 6

*Mrs. W. v. Tirozzi,*
   832 F.2d 748 (2d Cir. 1987).......................................................................... 13

*N.S. v. Tennessee Department of Education, Knox County Board of Education,*
   No. 3:16-CV-0610, 2016 WL 3763264 (M.D. Tenn. July 14, 2016) ............. 13–14, 15, 16, 18

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,*
   591 F.3d 250 (4th Cir. 2009) ...................................................................... 5, 26

*Nicholas v. Wyndham Int'l Inc.,*
   373 F.3d 537 (4th Cir. 2004) ......................................................................... 28

*Olmstead v. L.C. ex rel. Zimring,*
   527 U.S. 581 (1999)........................................................................ 2, 18, 25, 27

*Owens v. Balt. City State's Attnys Off.,*
   767 F.3d 379 (4th Cir. 2014) .............................................................. 2, 28, 29, 30

*P.H. by Luna v. Tehachapi Unified Sch. Dist.,*
   117CV00257DADJLT, 2017 WL 3085020 (E.D. Cal. June 9, 2017)........................... 7, 8, 9

*Pandazides v. Va. Bd. of Educ.,*
   13 F.3d 823 (4th Cir. 1994) ...................................................................... 18, 19

*Parker-Leon v. Middle Vill. Preparatory Charter Sch.,*
   No. 17CV4548NGGRML, 2019 WL 2394211 (E.D.N.Y. June 6, 2019) ........................... 11

*Parrish v. Bentonville Sch. Dist.,*
   No. 5:15-CV-05083, 2017 WL 1086198 (W.D. Ark. Mar. 22, 2017).................................. 10

*Pathways Psychosocial v. Town of Leonardtown, MD,*
  133 F. Supp. 2d 772 (D. Md. 2001) ............................................................... 24

*Patrick v. Success Academy Charter Schs., Inc.,*
  354 F. Supp. 3d 185 (E.D.N.Y. 2018) ............................................................ 11

*Paulone v. City of Frederick,*
  787 F. Supp. 2d 360 (D. Md. 2011) ................................................................ 27

*Reid v. Prince George's Cty. Bd. of Educ.,*
  60 F. Supp. 3d 601 (D. Md. 2014) ............................................................ 13, 15

*Rohrbaugh ex rel. Rohrbaugh v. Lincoln Intermediate Unit,*
  255 F. Supp. 3d 589 (M.D. Pa. 2017) ............................................................ 10

*Rutherford v. Fla. Union Free Sch. Dist.,*
  No. 16-CV-9778 (KMK), 2019 WL 1437823 (S.D.N.Y. Mar. 29, 2019) ............ 11

*S. Walk at Broadlands Homeowner's Ass'n, Inc. v.
  OpenBand at Broadlands, LLC,*
  713 F.3d 175 (4th Cir. 2013) .......................................................................... 22

*Saunders v. Gen. Servs. Corp.,*
  659 F. Supp. 1042 (E.D. Va. 1987) ................................................................. 21

*Semple v. City of Moundsville,*
  195 F.3d 708 (4th Cir. 1999) .......................................................................... 28

*Serrano v. Cintas Corp.,*
  699 F.3d 884 (6th Cir. 2012) .......................................................................... 26

*Shepard v. Irving,*
  77 F. App'x 615 (4th Cir. 2003) .................................................................. 2, 30

*Spell v. McDaniel,*
  824 F.2d 1380 (4th Cir. 1987) ........................................................................ 29

*Swann v. Charlotte–Mecklenburg Bd. of Ed.,*
  402 U.S. 1 (1971)...................................................................................... 18, 19

*T.R. v. Sch. Dist. of Phila.,*
  223 F. Supp. 3d 321 (E.D. Pa. 2016) .............................................................. 14

*Tcherepnin v. Knight,*
  389 U.S. 332 (1967)........................................................................................ 18

*Torcasio v. Murray,*
  57 F.3d 1340 (4th Cir. 1995) .......................................................................... 19

*Town of Burlington v. Dep't of Educ.,*
  736 F.2d 773 (1st Cir. 1984)........................................................................... 15

*Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,*
  429 U.S. 252 (1977)........................................................................................ 23

*Vlasaty v. Wake Cty. Pub. Sch. Sys. Bd. of Educ.,*
  No. 5:17-CV-578-D, 2018 WL 4515877 (E.D.N.C. Sept. 20, 2018) ................... 15

*W.H. by & through M.H. & D.R. v. Tenn. Dept. of Educ.*,
    No. 3:15-1014, 2016 WL 236996 (M.D. Tenn. Jan. 20, 2016) ................................. 14, 15, 18

*Warth v. Seldin*,
    422 U.S. 490 (1975)........................................................................................................ 20

*Z.G. v. Pamlico Cty. Pub. Schs. Bd. of Educ.*,
    744 Fed. App'x. 769 (4th Cir. 2018) ............................................................................. 13

*Zemedagegehu v. Arthur*,
    No. 1:15CV57 JCC/MSN, 2015 WL 1930539 (E.D. Va. Apr. 28, 2015) ........................... 19

**Constitutional Provisions**

U.S. Const. amend. IV ................................................................................... 2, 23, 28, 29

U.S. Const. amend. XIV ................................................................................. 2, 23, 28, 29

**Statutes**

20 U.S.C. § 1400............................................................................................................. 6

20 U.S.C. § 1415..................................................................................................... 2, 5, 7

29 U.S.C. § 794......................................................................................................... 1, 24

42 U.S.C. § 12101......................................................................................................... 19

42 U.S.C. § 12131........................................................................................................... 1

42 U.S.C. § 12132......................................................................................................... 24

42 U.S.C. § 1983............................................................................................................. 1

**Rules**

Fed. R. Civ. P. 12.................................................................................................... 1, 2, 5

Fed. R. Civ. P. 20......................................................................................................... 19

Fed. R. Civ. P. 26......................................................................................................... 28

**Regulations**

28 C.F.R. § 35.130................................................................................................... 24, 25

**Other Authorities**

Angela Woolsey, *Grand Jury indicts former FCPS staff, school principal*, Fairfax
    County Times (Dec. 20, 2019)....................................................... 17, 26, 27, 29 30

Catherine E. Lhamon, *Dear Colleague Letter: Restraint and Seclusion of Students
    with Disabilities*, U.S. Dep't of Educ. Off. for Civil Rights, 12, 17 (Dec. 28,
    2016) ............................................................................................................................ 18

Perry Zirkel, *Adjudicative Remedies for Denials of FAPE Under the Idea*, 33 J.
    Nat'l Ass'n Admin. L. Judiciary 214, 228 (2013) .............................................. 7, 12

Perry Zirkel, *The Remedial Authority of Hearing and Review Officers Under the
    Individuals with Disabilities Education Act: An Update*, 31 J. Nat'l Ass'n
    Admin. L. Judiciary 1 (2011)................................................................................. 6–7

## INTRODUCTION

Plaintiffs' Amended Complaint seeks to hold Defendants accountable for over 1,000 known instances of physical restraint and seclusion of six students with disabilities, beginning when some were only five and six years old. Pls.' Am. Compl. ("Am. Compl."), ECF No. 17, ¶¶ 88, 96, 116, 119, 121, 135–36, 138, 142, 147–48, 167, 171, 177, 182–83, 200, 215–16, 224. Likewise, the Amended Complaint seeks to hold Defendants accountable for other unjustified restraints and seclusions perpetrated upon Organizational Plaintiffs' members and injuries to their core missions. Defendants claim to have been "at the forefront in developing robust guidelines to address" restraint and seclusion, Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem."), ECF No. 19, 1, despite media reports exposing years of abuse and failure to meet federal reporting guidelines. Am. Compl. ¶¶ 23, 95–96, 103–111. In reality, Defendants' actions and inactions demonstrate a "policy, practice, pattern, and/or custom of discriminating against Plaintiffs in violation of the constitutionally protected liberty and privacy interests," federal, and state laws. Am. Compl. ¶¶ 45–61, 71–74, 84–305.

Defendants' Memorandum in Support of their Motion to Dismiss offers nothing more than a hodgepodge of legal theories thrown together to absolve themselves of years of systemic abuse and mistreatment of some of the most vulnerable students in their care. Defendants' arguments are meritless for a number of reasons.

First, Plaintiffs have sufficiently alleged subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Exhaustion pursuant to the Individuals with Disabilities Education Act ("IDEA") is not required because the gravamen of Plaintiffs' Amended Complaint is the systemic discriminatory abuse and segregation of students with disabilities in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; and 42 U.S.C. § 1983 ("Section 1983") pursuant to the

Fourth and Fourteenth Amendments of the United States Constitution. Even if Plaintiffs' claims could be considered to trigger the IDEA exhaustion requirement under 20 U.S.C. § 1415(*l*), no exhaustion is required here due to well-established exceptions cemented in case law.

Moreover, all Plaintiffs have sufficiently alleged standing. Individual Plaintiffs allege that they have been subjected to systemic discrimination committed by and throughout Fairfax County Public Schools ("FCPS") entitling them to relief. *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 597 (1999). Organizational Plaintiffs have established standing because they allege: (1) cognizable injury to their interests and diversion of resources caused by Defendants' misconduct; and (2) representational standing for injunctive and declaratory relief on behalf of their members.

Second, Plaintiffs have sufficiently stated claims for which relief can be sought. Fed. R. Civ. P. 12(b)(6). Regarding Plaintiffs' ADA and Section 504 claims, Defendants attempt to shift the burden to Plaintiffs and argue the merits of the case by ignoring Plaintiffs' allegations that Defendants' were motivated by Plaintiffs' disabilities and disability-related behaviors. Plaintiffs need only allege that Defendants' actions were harmful because of their disabilities. *See Erickson v. Bd. of Govs of State Colleges & Univs. For Ne. Ill. Univ.*, 207 F.3d 945, 949 (7th Cir. 2000). Plaintiffs allege failure to reasonably modify policies, disparate treatment, disparate impact discrimination, and unnecessary segregation, which do not require motivation. And Plaintiffs have satisfactorily advanced three separate theories of liability under Section 1983. *Owens v. Balt. City State's Att'ys Office*, 767 F.3d 379, 403 (4th Cir. 2014).

Third, courts routinely permit suits against individual defendants, and it would be premature to dismiss Dr. Brabrand and Ms. Johnson at this stage. *Shepard v. Irving*, 77 F. App'x 615, 620 (4th Cir. 2003).

Plaintiffs respectfully request that Defendants' Motion to Dismiss be denied.

2

## STATEMENT OF FACTS

Plaintiffs incorporate by reference all allegations and reasonable inferences in their Amended Complaint. This case involves six students ("Individual Plaintiffs") with disabilities who have been physically assaulted, injured, and locked in isolation by agents of Defendants Fairfax County School Board, FCPS Superintendent Dr. Scott Brabrand, and FCPS Assistant Superintendent Teresa Johnson. Am. Compl. ¶¶ 1–39. Three organizations ("Organizational Plaintiffs") also sue for injuries to their members and their core missions. Am. Compl. ¶¶ 34–36, 250–54; Ex. 1, Decl. of Selene ("Almazan Decl.") ¶¶ 3–25; Ex. 2, Decl. of Sam Crane ("Crane Decl.") ¶¶ 3–25; Ex. 3, Decl. of Tauna Szymanski ("Szymanski Decl.") ¶¶ 2–20.

For years, Defendants have routinely and unnecessarily inflicted restraint and seclusion on students with disabilities because of their disability-related behaviors. Am. Compl. ¶¶ 1–24, 74–81, 84–259. Despite FCPS Guidelines that purport to restrict restraint and seclusion, Am. Compl. ¶¶ 68–70, Defendants continue to restrain and isolate students with disabilities as punishment for disability-related behaviors, rather than in narrow emergency situations. Am. Compl. ¶¶ 74–81, 84–259. This is true despite available, safer, and more effective alternatives that Defendants have failed to implement, resulting in a failure to accommodate the needs of students with disabilities. Am. Compl. ¶¶ 8, 17, 50, 55, 60, 67–69, 76–77, 82, 84, 87, 89, 95, 259–60, 278. Defendants blatantly ignore legislation and federal guidance—which Organizational Plaintiffs helped develop—resulting in discrimination under the ADA and Section 504. Am. Compl. ¶¶ 44–61, 72, 74, 84–114, 116–253, 262–93. Defendants' disproportionate use of restraint and seclusion disparately impacts students with disabilities, Am. Compl. ¶¶ 41, 65, 84–114, 276, 282, 290–91, and has harmed Organizational Plaintiffs and their members, Am. Compl. ¶¶ 34–36, 250–54; Ex. 1, Almazan Decl. ¶¶ 3–25; Ex. 2, Crane Decl. ¶¶

3–25; Ex. 3, Szymanski Decl. ¶¶ 2–20.

Moreover, Defendants have committed constitutional violations by sanctioning a policy, custom, pattern, and practice of using unlawful restraints on children with disabilities. Defendants either expressly authorized or were deliberately indifferent to actions by their subordinates that caused physical and emotional harm to Plaintiffs. Am. Compl. ¶¶ 13, 75, 81, 91–94, 96, 103–11, 116–249, 254–55, 276, 282, 290–91. Defendants failed to implement accountability structures, adequately train their staff and agents, prevent staff from physically harming plaintiffs, and, instead, forced them into isolation because of their disabilities. Am. Compl. ¶¶ 8, 15, 44, 49, 70–71, 76–81, 88–89, 98, 101–11, 113, 116–255, 277, 294–305. Despite federally mandated obligations, Am. Compl. ¶¶ 55–56, 69, 70–71, 104, Defendants failed to notify parents when their children were restrained or secluded and falsely reported zero instances of restraint and seclusion from 2013 to 2017, even when their own records revealed otherwise, Am. Compl. ¶¶ 101–02, 109, 116–18, 139. As early as December 2015, Defendants were on notice of the unjustified use of restraint and seclusion when a complaint was filed with the U.S. Department of Education Office for Civil Rights ("OCR") for "Disability – Restraint and Seclusion." Am. Compl. ¶ 255. Yet, Defendants closed their eyes to the nearly 1,700 incidents of restraint and seclusion evident in their own records and took no action until they were called out publicly by the media in 2019. Am. Compl. ¶ 104 n.28.

This case is not about quibbles over appropriate special education services for individual children. Defendants handled this widespread epidemic across the nation's tenth largest school district with merely an emergency meeting and a short-lived "Special Education Task Force." Am. Compl. ¶¶ 76–81, 105–15. Ironically, Defendants' choice of the name "Special Education Task Force" shows that, in Defendants' minds, restraint and seclusion is only used on students

with disabilities. Am. Compl. ¶ 81 n.18. And they are right—the nearly 1,700 incidents of

restraint and seclusion revealed in news reports involved 203 individual children, most of whom

were students with disabilities. Am. Compl. ¶ 104 n.28. Accordingly, this case requires far-

reaching remedies to rectify the damage Defendants have caused and continue to cause.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When a

party moves to dismiss a complaint pursuant to Rule 12(b)(1) for lack of subject matter

jurisdiction, "all the facts alleged in the complaint are assumed to be true and the plaintiff, in

effect, is afforded the same procedural protection as he would receive under Rule 12(b)(6)[.]"

*Edwards v. Murphy-Brown, LLC*, 760 F. Supp. 2d 607, 614 (E.D. Va. 2011) (citations omitted).

A defendant seeking dismissal under Rule 12(b)(6) bears the burden of demonstrating

that plaintiffs' claims are legally insufficient, *i.e.*, they have stated *no claim* to relief that is

plausible on its face. *Twombly*, 550 U.S. at 570 (emphasis added). This Court accepts all factual

matter in the complaint as true and draws all reasonable inferences in Plaintiffs' favor. *Nemet*

*Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255–56 (4th Cir. 2009).

## ARGUMENT

I.   **THIS COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS'
     CLAIMS AND CORRESPONDING RELIEF.**

A.   **Individual Plaintiffs are not required to exhaust under *Fry v. Napoleon
     Community School*, and, even if they were, exceptions apply.**

Under *Fry v. Napoleon Community School*, 137 S. Ct. 743 (2017), exhaustion is not

required pursuant to 20 U.S.C. § 1415(*l*) of the IDEA in a case such as this one. Here, Plaintiffs

do not seek special education services; they seek, *inter alia*: (1) to end assaults on and unjustified

segregation of students with disabilities; and (2) systemic relief that will protect students with

disabilities from direct and imminent threat of harm, relief that is available under the ADA and

Section 504 and not under the IDEA. Even if Plaintiffs were required to file due process

complaints under the IDEA before seeking remedies under different laws, governing exceptions

apply to prevent an unjust result.[1]

### 1.   *Fry* does not require exhaustion under the circumstances of this case.

In *Fry*, the Supreme Court examined the relationship between the IDEA, ADA, and

Section 504 and formed a test to determine when IDEA exhaustion is required for claims under

the ADA and Section 504. Enacted around the same time as Section 504's nondiscrimination

requirements, the IDEA imposes additional affirmative obligations on educational programs to

provide "special education and related services" required to ensure a free and appropriate public

education ("FAPE"). 20 U.S.C. § 1400(d)(1)(A). However, the IDEA's remedies are limited. *See*

*generally* Perry Zirkel, *The Remedial Authority of Hearing and Review Officers Under the*

*Individuals with Disabilities Education Act: An Update*, 31 J. Nat'l Ass'n Admin. L. Judiciary 1

(2011).[2] Importantly, "[n]othing in [the IDEA] shall be construed to restrict or limit the rights,

---

[1] As a threshold matter, any alleged failure to exhaust is an affirmative defense. *Cf. Jones v. Bock*, 549 U.S. 199, 218 (2007) (holding failure to exhaust under Prison Litigation Reform Act is affirmative defense, not a jurisdictional deficiency); *accord Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ.,* 655 Fed. App'x. 423, 430–31 (6th Cir. 2016) (indicating same under IDEA); *McQueen v. Colorado Springs Sch. Dist. No. 11*, 488 F.3d 836, 873 (10th Cir. 2007); *Mosely v. Bd. of Educ.,* 434 F.3d 527, 533 (7th Cir. 2006). Thus, Defendants, not Plaintiffs, bear the burden to establish that exhaustion is required. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (citations omitted). Because a motion to dismiss that "test[s] the sufficiency of the complaint[] generally cannot reach the merits of an affirmative defense," *id.*, and, as argued, Plaintiffs have sufficiently pled facts on the face of the Amended Complaint showing exhaustion is not required, dismissal is inappropriate.

[2] The most frequent remedies awarded in due process proceedings are tuition reimbursement, compensatory education, prospective IEP revisions, prospective services, and prospective placement evaluation, Perry Zirkel, *Adjudicative Remedies for Denials of FAPE Under the Idea*, 33 J. Nat'l Ass'n Admin. L. Judiciary 214, 228 (2013) [hereinafter *Adjudicative Remedies*], none

procedures, and remedies available under the Constitution, the [ADA]," and Section 504. *Fry*, 137 S. Ct. at 750 (quoting 20 U.S.C. § 1415(*l*)).

Thus, it is simply not the case that every injury to a student with disabilities in a school is subject to IDEA administrative exhaustion. *Compare* Defs.' Mem. 11; *with Fry*, 137 S. Ct. at 754. Rather, the Supreme Court held exhaustion is required only when the gravamen of a complaint is the denial of FAPE. *Id.* at 752. Thus, courts ask whether: (1) a plaintiff could have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school; and (2) an adult employee or visitor at the school could have pressed essentially the same grievance. *Id.* at 756. Courts also consider whether "a plaintiff has previously invoked the IDEA's formal procedures to handle the dispute[.]" *Id.* at 757.

        a.     *Plaintiffs would have viable claims if similar conduct occurred at other public facilities.*

Defendants argue that their egregious conduct is the isolated denial of special education services. Defs.' Mem. 9–16. But restraint and seclusion are not educational services at all—let alone ones required by the IDEA. Rather, they are tools Defendants use to discriminate against students on the basis of their disabilities. Thus, Plaintiffs' claims are grounded in the denial of equal access to their schools and programs, refusal to reasonably accommodate them, and discrimination against them. *P.H. by Luna v. Tehachapi Unified Sch. Dist.*, 117CV00257DADJLT, 2017 WL 3085020, at *4 (E.D. Cal. June 9, 2017). If Defendants' actions were done at other public facilities, Plaintiffs would have similar claims.

For example, in *Hurd v. Clark County School District*, No. 216CV02011GMNNJK, 2017 WL 4349231, at *1 (D. Nev. Sept. 29, 2017), students with disabilities alleged that school staff subjected them to "a litany of physical and verbal abuses," including, "being pushed and

---

of which Plaintiffs request here.

grabbed," "shoved into a wall," and "being grabbed hard enough to leave marks[.]" *Id.* Applying

*Fry*, the court denied a motion to dismiss, concluding that "the complaint makes no direct

reference to the adequacy of the special education services provided at the Students' school," and

instead focused on "the injuries caused by the alleged discrimination and abuse." *Id.* at *4.

Similarly, here, Plaintiffs' claims "would be actionable whether the conduct occurred at a non-

school public facility or against adults." *Id.*

In *P.H.*, a student was "bruised," left in "soiled papers," and "tied to a chair with a

blanket" for "entire school days." 2017 WL 3085020, at *1. Finding FAPE was not the gravamen

of her complaint, the court stated:

> [T]he complaint alleges that defendants *isolated P.H.* from other school children
> during the school day, *resulting in the denial of school programs and services*, and
> *physically and psychologically abused* her because of her disability. The complaint
> does not allege that defendants provided inadequate special education services or
> failed to provide sufficient supportive services for plaintiff's disability.

*Id.* at *4 (emphasis added).

Here, Individual Plaintiffs allege similar physical and psychological abuse including:

- Q.T. was restrained and/or secluded in a locked room on 745 occasions, causing him
  to soil himself, only to be forced to clean his own mess, Am. Compl. ¶¶ 118, 125;

- A.O. was dragged down the hall, held down on the floor, and observed staff hold
  another child in a chokehold, Am. Compl. ¶¶ 138, 141;

- D.O. was placed in a chokehold and bent at a 90-degree angle, struck in the head by a
  handheld radio, resulting in a concussion, headaches, and concentration issues, and
  restrained by at least three adults, leaving documented bruises, scrapes, and cuts, Am.
  Compl. ¶¶ 150, 156, 162;

- C.T. was placed in a locked room and left screaming, "Somebody help me, please let
  me out!" from inside, Am. Compl. ¶ 171;

- J.M. was subjected to 326 known incidents of restraint or seclusion over 62 days,
  causing him to engage in self-injurious behavior leaving bruises on his head, and had
  his communication device taken from him, resulting in a regression in his
  communication skills, Am. Compl. ¶¶ 183, 186, 188, 201–03; and

- J.R. was threatened that police would be called, physically placed into either a windowless room with padding that does not lock or a smaller room that does lock, and grabbed by his leg and dragged down a hall, Am Compl. ¶¶ 216, 223–24, 241.

These allegations would be actionable if perpetrated discriminatorily by staff at a library, hospital, or elsewhere. *Hurd*, 2017 WL 4349231, at *3–4; *P.H.*, 2017 WL 3085020, at *4.

Defendants place undue emphasis on the *setting* of the alleged abusive conduct, rather than the *conduct* itself. Defs.' Mem. 11–12. *Fry* specifically cautions against this:

> Suppose that a teacher, acting out of animus or frustration, strikes a student with a disability, who then sues the school under a statute other than the IDEA. . . . [Although the setting] might be pertinent in assessing the reasonableness of the challenged conduct . . . the plausibility of bringing other variants of the suit indicates that the gravamen of the plaintiff's complaint does not concern the appropriateness of an educational program.

137 S. Ct. at 756 n.9. The abusive conduct perpetrated against Plaintiffs by Defendants would be unacceptable in any setting, regardless of Defendants' IDEA obligations.

Defendants rely on inapposite cases from other circuits to argue all restraints and seclusions performed on a child with disabilities at a school require exhaustion. Defs.' Mem. 11–12 (citing *J.L. ex rel. Leduc v. Wyo. Valley W. Sch. Dist.*, 722 F. App'x 190, 193 (3d Cir. 2018); *J.M. v. Francis Howell Sch. Dist.*, 850 F.3d 944, 948 (8th Cir. 2017)). Both cases involved plain IDEA claims for transportation or supportive services pertaining to instruction. *J.L*, 722 F. App'x at 192; *J.M.*, 850 F.3d at 949. Plaintiffs do not present such claims in this case. Am. Compl. ¶¶ 254–61. And although cases in this circuit have not addressed the issue, other courts addressing analogous facts have squarely rejected Defendants' proposition. *See, e.g., P.H.*, 2017 WL 3085020, at *4; *Hurd*, 2017 WL 4349231, at *3–4; *Lawton v. Success Acad. Charter Schs., Inc.*, 323 F. Supp. 3d 353, 362 (E.D.N.Y. 2018); *Abraham P. v. Los Angeles Unified Sch. Dist.*, No. CV 17-3105-GW (FFMX), 2017 WL 4839071, at *4–5 (C.D. Cal. Oct. 5, 2017); *GM by & Through Mason v. Lincoln Cty. Sch. Dist.*, No. 6:16-CV-01739-JR, 2017 WL 2804996, at *4 (D.

9

Or. Apr. 21, 2017), *report and recommendation adopted*, No. 6:16-CV-01739-JR, 2017 WL 2804949 (D. Or. June 28, 2017); *K.G. by & through Gosch v. Sergeant Bluff-Luton Cmty. Sch. Dist.*, 244 F. Supp. 3d 904, 909, 923 (N.D. Iowa Mar. 23, 2017); *Graham v. Friedlander*, 334 Conn. 564, 581–88 (2020). Thus, the answer to the first *Fry* question, whether the plaintiff could have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school, is "yes," showing exhaustion is not required. *Fry*, 137 S. Ct. at 756.[3]

> *b.    An adult visitor could bring similar claims.*

The second *Fry* factor also weighs in Plaintiffs' favor. Courts have found that the denial of reasonable modifications to provide equal access to school facilities and education are not subject to IDEA exhaustion, even where there is overlap. *See, e.g., Doucette v. Georgetown Pub. Sch.*, 936 F.3d 16, 28 (1st Cir. 2019) (holding exhaustion not required when school refused to allow student access to service dog because "the crux of the [plaintiffs'] section 504 claim is simple discrimination, irrespective of the school district's FAPE obligation"); *see also Hurd*, 2017 WL 4349231, at *1 ("Plaintiffs are not challenging the quality or accessibility of the FAPE itself but rather the Students' ability to benefit from the FAPE in light of the abuse.").

Plaintiffs allege Defendants have failed to reasonably accommodate their disabilities, *i.e.*, the discrimination that occurs when an adult is denied equal access to the "services, programs, or

---

[3] Defendants also misconstrue *Rohrbaugh ex rel. Rohrbaugh v. Lincoln Intermediate Unit*, 255 F. Supp. 3d 589, 595–96 (M.D. Pa. 2017), and *Parrish v. Bentonville Sch. Dist.*, No. 5:15-CV-05083, 2017 WL 1086198, at *31 (W.D. Ark. Mar. 22, 2017). Mot. Dismiss 11 n.6. *Rohrbaugh* involved allegations that "ma[d]e clear that [plaintiffs'] claims" were governed by the denial of special education services, 255 F. Supp. 3d at 595–96, and not the physical assault, denial of accommodations, disparate treatment, and disparate impact alleged by Plaintiffs. Am. Compl. ¶¶ 41, 44–61, 65, 72, 74, 84–114, 116–253, 262–305. In *Parrish*, the Eighth Circuit held that the "*Fry* analysis *does not clearly demonstrate preclusion is or is not appropriate*." 2017 WL 1086198, at *31 (emphasis added). Instead, the court relied on *J.M. v. Francis Howell Sch. Dist.*, 850 F.3d 944, 949 (8th Cir. 2017), a factually distinguishable case. *K.G.*, 244 F. Supp. 3d at 921.

activities of a public entity[.]" Am. Compl. ¶¶ 8, 17, 84, 95, 113, 229, 259, 265, 274, 279, 287, 290. If, for example, an adult with autism refused to leave a school gymnasium after a basketball game because of his disability and, as a result, was "grabbed" by his "right arm, leaving three documented bruises and scrapes," "began bleeding," and was later placed in a locked room and forced to "soil[] himself until released," *compare* Am. Compl. ¶¶ 125, 162, Defendants would be liable under the theories Plaintiffs assert, as well as a variety of torts. And if the same adult with disabilities were held in a chokehold or struck in the head with a handheld radio, Am. Compl. ¶¶ 141, 150, 156, 171, they, too, would have viable claims under the ADA and Section 504.[4]

Various courts agree. *See, e.g., J.S., III by & through J.S. Jr. v. Houston Cty. Bd. of Educ.*, 877 F.3d 979, 986 (11th Cir. 2017) (holding that isolation of a student with disabilities for no educational purpose is a form of discrimination that could be brought by an institutionalized adult as an ADA claim); *Parker-Leon v. Middle Vill. Preparatory Charter Sch.*, No. 17CV4548NGGRML, 2019 WL 2394211, at *5 (E.D.N.Y. June 6, 2019); *Patrick v. Success Acad. Charter Schs., Inc.*, 354 F. Supp. 3d 185, 228 (E.D.N.Y. 2018); *Rutherford v. Fla. Union Free Sch. Dist.*, No. 16-CV-9778 (KMK), 2019 WL 1437823, at *32 (S.D.N.Y. Mar. 29, 2019); *Hurd*, 2017 WL 4349231, at *3–4; *K.G.*, 244 F. Supp. 3d at 923; *Lawton*, 323 F. Supp. 3d at 362; *Graham*, 334 Conn. at 588. Because the answer to the second *Fry* question is "yes," exhaustion is not required.

> c.    *Plaintiffs have not historically invoked IDEA procedures regarding restraint and seclusion.*

---

[4] *See, e.g., Gorman v. Bartch*, 152 F.3d 907, 913 (8th Cir. 1998) (holding ADA claims viable for wheelchair user injured while being transported by police in a van that was not equipped with wheelchair restraints); *Estate of Robert Ethan Saylor v. Regal Cinemas, Inc.*, No. WMN-13-3089, 2016 WL 4721254, at *10, *18, *23 (D. Md. Sept. 9, 2016) (finding viable ADA and Section 1983 claims where Sheriffs physically removed a 26-year-old individual with Down Syndrome from movie theater causing his death).

None of the Individual Plaintiffs have "previously invoked the IDEA's formal procedures [.]" *Fry*, 137 S. Ct. at 757. Defendants rely on a single instance in which A.O., one of six plaintiffs, requested a due process hearing to have an expert evaluate whether A.O.'s behaviors were a manifestation of her disability in order to to decide an appropriate school setting, not restraint and seclusion. Ex. 4, Decl. of Pamela Ononiwu ("Ononiwu Decl.") ¶¶ 2–9. That challenge to placement was about special education services, but the relief Plaintiffs seek here, *e.g.*, provision of basic reasonable accommodations, requiring staff training on supporting students with disabilities, restricting restraint and seclusion, and performing district-wide data collection, are not. Am. Compl. ¶ 259; *Koster v. Frederick Cty. Bd. of Educ.*, 921 F. Supp. 1453, 1456 (D. Md. 1996); *Adjudicative Remedies*, *supra* at 228.

Defendants cite to no other instances where Plaintiffs sought administrative relief, refuting their claim that there is "strong evidence that the substance of [the] plaintiff's claim concerns the denial of a FAPE." Defs.' Mem. 12.[5] Even if a single Plaintiff's invocation of the IDEA process for placement unrelated to restraint and seclusion were relevant, it cannot be imputed to the others and does not change the gravamen of the complaint. *Hurd*, 2017 WL 4349231, at *4 (citing *Fry*, 137 S. Ct. at 757). Because the third and final *Fry* factor also militates in Plaintiffs' favor, exhaustion should not be required.

## 2.    Even if *Fry* required exhaustion, the Fourth Circuit recognizes exceptions that apply in this case.

Assuming, *arguendo*, that Plaintiffs' claims would generally require exhaustion, the Fourth Circuit has identified exceptions applicable here: (1) when exhaustion would have been futile; (2) when a school board failed to give parents proper notification of their IDEA rights; or

---

[5] At the very least, the discrepancy between Ms. Johnson's and Ms. Ononiwu's declarations creates a genuine dispute of fact, evidencing why dismissal is inappropriate.

(3) when exhaustion would have worked severe harm upon a child with disabilities. *MM ex rel. DM v. Sch. Dist. of Greenville Cty.*, 303 F. 3d 523, 535–36 (4th Cir. 2002) (citations omitted).

### a.    Futility

Futility arises when "a plaintiff's complaint involves issues outside or beyond the ken of [school] administrators—issues not related to how to meet the educational needs of the particular student," and, therefore, exhaustion "serves no purpose." *Reid v. Prince George's Cty. Bd. of Educ.,* 60 F. Supp. 3d 601, 606–07 (D. Md. 2014). Exhaustion is futile where the IDEA process is unable to grant the specific relief requested, including systemic reforms unavailable under the IDEA. *Koster*, 921 F. Supp. at 1456; *see also Beth V. by Yvonne V. v. Carroll*, 87 F.3d 80, 89 (3d Cir. 1996); *Mrs. W. v. Tirozzi*, 832 F.2d 748, 757 (2d Cir. 1987) (citations omitted).[6]

In *N.S. v. Tennessee Department of Education, Knox County Board of Education*, No. 3:16-CV-0610, 2016 WL 3763264 (M.D. Tenn. July 14, 2016), the court found futility applied where children with autism and other developmental disabilities claimed, as Plaintiffs do here:

> faculty and staff members have improperly misused and overused isolation and restraint techniques on children with disabilities, including the plaintiffs, and that the defendants have failed to take steps to mitigate this problem. . . . In many instances, according to the Complaint, these incidents of isolation or restraint were not accompanied by requisite parental notifications, were not properly documented, and were implemented without any attempt to employ alternative de-escalation strategies. In addition, the records of incidents which were recorded include only a description of the child's behavior that purportedly necessitated the use of the isolation or restraint but do not include any information about the antecedent factors that triggered the child's behavior. . . .

According to the Complaint, the misuse and overuse of isolation and restraint is a

---

[6] The only Fourth Circuit case addressing *Fry* and, specifically, the futility exception, is *Z.G. v. Pamlico Cty. Pub. Schs. Bd. of Educ.,* 744 Fed. App'x. 769 (4th Cir. 2018). The Court held the gravamen of plaintiffs' complaint was educational placement, services, procedural rights under the IDEA, and retaliation. *Id.* at 779. By contrast, Plaintiffs do not allege deficiencies with special education services, but systemic discrimination under the ADA and Section 504. *E.g.,* Am. Compl. ¶¶ 76–81, 88, 101–109, 116–254. Because *Z.G.* is readily distinguishable, it is not surprising that Defendants only cite *Z.G.* for general propositions established in *Fry*. Mot. Dismiss 9–10, 13, 15.

systemic problem throughout KCS, evidenced by specific publicized incidents. . . .

Finally, according to the Complaint, the data on the use of isolation and restraint has not been properly collected by TDOE or reported to the Advisory Council for the Education of Students with Disabilities (the "Council"). The Council, in turn, has made no recommendations as to how to mitigate the alleged problems. Minutes of meetings between TDOE and the Council show that discussions of this issue have been avoided or postponed and, as a consequence, no action has been taken by TDOE to reduce or eliminate isolation and restraint or to enforce TDOE's policies governing their use.

*Id.* at *1–2.

Futility applies equally here. "[T]he primary challenge is not to the individual instances in which the plaintiffs were subjected to isolation or restraint but to the systemic failure of the defendants to take measures that would mitigate the use of isolation and restraint and replace these procedures with alternative strategies[.]" *Id.* at *9; *see also W.H. by & through M.H. & D.R. v. Tenn. Dept. of Educ.*, No. 3:15-1014, 2016 WL 236996, at *5 (M.D. Tenn. Jan. 20, 2016). Defendants argue that exhaustion "applies to any claim seeking relief that is also available under the IDEA." Defs.' Mem. 9 (internal quotation marks omitted). But they do not show that the relief Plaintiffs seek is available under the IDEA, and for good reason—it simply is not. *Cf. T.R. v. Sch. Dist. of Phila.*, 223 F. Supp. 3d 321, 330 (E.D. Pa. 2016).

Contrary to Defendants' argument, Plaintiffs do not challenge individual incidents of restraint or seclusion or denials of special education services. They challenge policies "that have the effect of discriminating against such students with disabilities on the basis of disability." Am. Compl. ¶ 16. They allege that Defendants have failed to train staff adequately in alternatives to restraint and seclusion, Am. Comp. ¶ 87; failed to support reasonable alternatives, Am. Comp. ¶¶ 89–91; failed to notify parents of incidents, Am. Compl. ¶ 97; been "remiss in [their] data collection and data reporting requirements for many years," Am. Compl. ¶¶ 94, 104; and "as a system," have "fallen short" in their policies and "accountability structures" for restraint and

seclusion, Am. Compl. ¶¶ 106–07. These system-wide failures result in routine and unnecessary restraint and seclusion in violation of law that cannot be addressed through the IDEA process.

Moreover, Plaintiffs allege facts, taken as true, that entitle them to compensatory damages "not available under the IDEA." *Reid*, 60 F. Supp. 3d at 606–07; Defs.' Mem. 13 n.10. Where both systemic relief and monetary damages are sufficiently pled, exhaustion would be futile. *See, e.g., N.S.*, 2016 WL 3763264, at *2; *W.H.*, 2016 WL 236996, at *6. Thus, the locus of this case focuses well beyond an individual school, student, curriculum, or placement, stretching across the entire district and into its planning, funding, and administration. Accordingly, exhaustion would "serve no purpose" and the futility exception applies. *Reid*, 60 F. Supp. 3d at 607.

### b.    *Failure to notify*

Exhaustion is similarly excused when a school system obstructs a plaintiff's access to administrative proceedings. *Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1096 (1st Cir. 1989); *accord Consolidation Coal Co. v. Borda*, 171 F.3d 175, 183–84 (4th Cir. 1999). Courts excuse exhaustion where school districts fail to provide adequate notice to parents. *Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 795 (1st Cir. 1984); *Vlasaty v. Wake Cty. Pub. Sch. Sys. Bd. of Educ.*, No. 5:17-CV-578-D, 2018 WL 4515877, at *5 (E.D.N.C. Sept. 20, 2018).

It is incumbent on Defendants to provide notice of restraint and seclusion to parents, not the other way around. *Town of Burlington*, 736 F.2d at 795; Defs.' Mem. 4–5. Plaintiffs allege that Defendants have failed to provide sufficient notice of each instance of restraint and seclusion. Am. Compl. ¶¶ 6, 18, 97, 112, 121–22, 129, 137–38, 142, 150–51, 154–56, 163–66, 174–75, 178–80, 194–95, 197, 199, 217, 227, 236, 239–43, 247, 257. Defendants used alternative terms for "restraint and seclusion" to avoid reporting requirements. Am. Compl. ¶¶ 98, 126, 224–25. Despite knowing that restraints and seclusions were occurring in their schools,

Defendants reported zero incidents of restraint and seclusion to the Federal government. Am. Compl. ¶ 101. After media reports uncovered Defendants' abuse, Defendants conceded that they failed to provide notice. Am. Compl. ¶¶ 110–13. Some of the very relief Plaintiffs' seek is based on Defendants' failure to notify. Am. Compl. ¶ 17. Students with disabilities should not be denied recourse simply because the school district has been, in Dr. Brabrand's words, "remiss in [its] data collection and data reporting requirements for many years." Am. Compl. ¶ 104; *N.S.*, 2016 WL 3763264, at *10 (excusing failure to exhaust when parents were not provided the "requisite parental notifications [and restraint and seclusion was] not properly documented").[7]

### c.    Severe harm

A third exception applies when "the alleged harm is so severe as to excuse Plaintiff from administrative exhaustion." *A.S. ex rel. Leonel S. v. Catawba Cty. Bd. of Educ.*, No. 5:11CV27-RLV, 2011 WL 3438881, at *4–6 (W.D.N.C. Aug. 5, 2011). Plaintiffs have alleged severe harm from Defendants improper use of restraint and seclusion. Am. Compl ¶¶ 63–66, 125, 128, 130–33, 143–45, 156, 159, 162, 171, 173, 181, 186, 188, 201–203, 214, 216, 225, 228–31, 241, 248–53. Each child is either still attending FCPS or is at a placement based on an agreement with FCPS. Am. Compl. ¶¶ 134, 160, 167, 182, 215. At least one child was physically assaulted by FCPS staff after the filing of Plaintiffs' first complaint. Am. Compl. ¶¶ 160–66. After Plaintiffs filed their Amended Complaint, news reports revealed that three former FCPS staff were

---

[7] Defendants misquote *A.H. ex rel. H.C. v. Craven Cty. Bd. of Educ.*, No. 4:16-cv-282, 2017 WL 3493612, at *3 (E.D.N.C. Aug. 14, 2017), to argue that failure to disclose a "specific- and unidentified-use of restraint or seclusion" does not trigger the notice exception. Defs.' Mem. 15. In *A.H.*, the court found a failure to notify a parent that an investigation the parent knew about would not be "independent" "is not a failure to notify a plaintiff of her administrative rights[.]" 2017 WL 3493612, at *3. Here, Plaintiffs' parents were rarely, if ever, notified about restraint or seclusion, and they can hardly be criticized for not initiating administrative proceedings when Defendants actively concealed this conduct from them.

criminally charged for abuse and neglect of students with disabilities. *See* Angela Woolsey,

*Grand Jury indicts former FCPS staff, school principal*, Fairfax County Times (Dec. 20, 2019).

In the meantime, Plaintiffs are subjected daily to a range of school staff who lack the training,

planning, and resources to eliminate this serious threat. The harm that Plaintiffs have endured

and remain at serious risk of justifies exemption under these extraordinary circumstances.[8]

> **B.      Both Individual and Organizational Plaintiffs have standing.**

All Plaintiffs have standing in this case. To meet the minimum constitutional

requirements for standing, a plaintiff must establish: (1) that the plaintiff has sustained an injury

in fact; (2) that the injury is traceable to the defendants' actions; and (3) that the injury likely can

be redressed by a favorable judicial decision. *Daniels v. Arcade, L.P.*, 477 F. App'x 125, 128–29

(4th Cir. 2012) (citations omitted). General allegations about Plaintiffs' injuries are all that is

needed to "presum[e] that . . . those specific facts that are necessary to support the claim." *Lujan*

*v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citations omitted).

> **1.      Individual Plaintiffs are entitled to the full panoply of rights under**
> **Title II of the ADA and Section 504.**

Defendants contend that Individual Plaintiffs lack standing because they are not entitled

to the relief they request. Defs.' Mem. 16–18. Defendants make this argument while

simultaneously acknowledging that Individual Plaintiffs are at least entitled to "narrower

individualized injunctions [that] would remedy [their] alleged harms." Defs.' Mem. 2.

---

[8] Requiring each Plaintiff to exhaust may also ensure that Plaintiffs can never file a federal ADA complaint. There is a one-year statute of limitations on ADA claims in Virginia. *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 347–48 (4th Cir. 2011). While Plaintiffs would seek equitable tolling, the preceding administrative process would not correspond to an outright challenge to restraint and seclusion because, as argued, the administrative process does not afford systemic relief. Following exhaustion, Plaintiffs would carry the risk that Defendants would argue that exhausting one issue would not toll the statute of limitations on the separate ADA claim. *Cf. Boggs v. Krum Indep. Sch. Dist.*, 376 F. Supp. 3d 714, 720 (E.D. Tex. 2019).

Defendants' argument demonstrates a fundamental misunderstanding of the relief available under the ADA and Section 504.

As a remedial statute, the ADA "should be construed broadly to effectuate its purposes." *Tcherepnin v. Knight*, 389 U.S. 332, 336 (1967). "As with any equity case, the nature of the violation determines the scope of the remedy." *Swann v. Charlotte–Mecklenburg Bd. of Educ.*, 402 U.S. 1, 16 (1971); *accord N.S.*, 2016 WL 3763264, at *9; *W.H.*, 2016 WL 236996, at *6. Under the ADA and Section 504, "plaintiffs are entitled to the 'full panoply' of legal remedies," including both injunctive and compensatory relief. *Adams v. Montgomery College (Rockville)*, 834 F. Supp. 2d 386, 393 (D. Md. 2011) (citing *Pandazides v. Va. Bd. of Educ.*, 13 F.3d 823, 829–30 (4th Cir. 1994)). Contrary to Defendants' argument, Defs. Mem. 18, Plaintiffs *are* entitled to counseling services to "remedy any negative effects that may have resulted from the school's prior use of restraint or seclusion that, if left unaddressed, would result in a denial of FAPE," and "training [of Defendants'] teachers and staff, as well as [school resource officers], to implement its policies in a neutral, nondiscriminatory manner." Catherine E. Lhamon, *Dear Colleague Letter: Restraint and Seclusion of Students with Disabilities*, U.S. Dep't of Educ. Off. for Civil Rights, 12, 17 (Dec. 28, 2016).

The Supreme Court approved similar relief in *Olmstead*, 527 U.S. at 597, holding: "Unjustified isolation . . . is properly regarded as discrimination based on disability" under Title II of the ADA and Section 504. The Court not only required the state of Georgia to release two individual plaintiffs from institutions and serve them in the community, but required the state to overhaul its mental health system to ensure persons with disabilities received programs and services in "the most integrated setting appropriate to" their needs. *Id.* at 602 (citations and emphasis omitted). Plaintiffs are entitled to similar remedies. *Pandazides*, 13 F.3d at

830; *Torcasio v. Murray*, 57 F.3d 1340, 1342 n.2 (4th Cir. 1995).

None of the cases Defendants cite discuss the breadth of remedies available under Title II and Section 504. Defs.' Mem. 17; *but see Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 484 (4th Cir. 2005) (citing 42 U.S.C. § 12101(b)(4)). Instead, Defendants rely on cases involving substantially different statutes. Defs.' Mem. 17.[9] Defendants' conjecture about what type of relief is available is an affirmative defense, not a jurisdictional issue, *cf. Swann*, 402 U.S. at 16, and it would be premature to dismiss Plaintiffs' Amended Complaint merely because Defendants dispute what relief is appropriate. *Compare Zemedagegehu v. Arthur*, No. 1:15CV57 JCC/MSN, 2015 WL 1930539, at *9 n.5 (E.D. Va. Apr. 28, 2015).[10]

### 2.     Organizational Plaintiffs have alleged facts sufficient to establish both organizational and representational standing.

Organizational Plaintiffs have standing to sue Defendants for their unlawful use of restraint and seclusion. As a threshold matter, "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement." *League of United Latin Am. Citizens - Richmond Region Council 4614 v. Pub. Interest Legal Found.*, No. 1:18-CV-00423, 2018 WL 3848404, at *2 (E.D. Va. Aug. 13, 2018) (citations omitted). As demonstrated above, because Individual Plaintiffs have standing, Organizational Plaintiffs need not demonstrate standing independently. Regardless, the "Supreme Court has instructed [courts] to take a broad

---

[9] *See Califano v. Yamasaki*, 442 U.S. 682 (1979) (Social Security Act); *Lewis v. Casey*, 518 U.S. 343, 359 (1996) (violations under *Bounds v. Smith*, 430 U.S. 817 (1977)); *Dayton Bd. of Educ. v. Brinkman*, 433 U.S. 406, 417 (1977) (desegregation under Equal Protection Clause); *Kentuckians for Commonwealth, Inc. v. Rivenburgh*, 317 F.3d 425 (4th Cir. 2003) (Clean Water Act).

[10] Plaintiffs have also sufficiently alleged joinder. Fed. R. Civ. P. 20(a)(1). Plaintiffs allege discrimination in the same kind of transaction, occurrence, or series of transactions or occurrences, *i.e.*, Defendants' unlawful use of restraint and seclusion on students with disabilities. "While it is true that the factual circumstances of each transaction differed," Plaintiffs have nevertheless satisfied joinder. *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 618 (4th Cir. 2001).

view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'" *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (citations omitted). Organizational Plaintiffs have sufficiently pled standing by: (1) alleging that Defendants have directly harmed their organizational interests and diverting resources to combat Defendants' unlawful practices; and (2) alleging direct harm to their members. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975).

a.    *Organizational standing*

"There is no question that an [organization] may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the [organization] itself may enjoy." *Id.* This Court "assumes that the merits of a dispute will be resolved in favor of the party invoking . . . jurisdiction in assessing standing and, at the pleading stage, presumes that general allegations embrace those specific facts that are necessary to support the claim." *King v. Sebelius*, 997 F. Supp. 2d 415, 423 (E.D. Va. 2014) (citations omitted). Plaintiffs have "alleged such a personal stake in the outcome of the controversy as to warrant [their] invocation of federal-court jurisdiction." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79 (1982).

"[T]here can be no question that the organization[s] ha[ve] suffered injury in fact." *Id.* at 379. Organizational Plaintiffs have "a shared mission of ending systemic mistreatment of persons with disabilities, including in school." Am. Compl. ¶ 250. They outline their history of educating members and the public about unlawful restraint and seclusion, including through education, legislative efforts, advocacy for individual families, and provision of resources to families. Am. Compl. ¶¶ 34–36, 250–53; Ex. 1, Almazan Decl. ¶¶ 3, 5–17; Ex. 2, Crane Decl. ¶¶ 3–16; Ex. 3, Szymanski Decl. ¶¶ 3–12. Defendants' pattern and practice of restraining and secluding students with disabilities in violation of federal law and their own guidelines impairs

these Plaintiffs' ability to provide training, resources, and education to prevent such discrimination. Am. Compl. ¶¶ 34–36, 250–53; Ex. 1, Almazan Decl. ¶¶ 11–17; Ex. 2, Crane Decl. ¶¶ 10–16; Ex. 3, Szymanski Decl. ¶¶ 9–12.

Moreover, Organizational Plaintiffs have "diverted significant resources to combat the [] unlawful use of restraint and seclusion against students with disabilities." *Saunders v. Gen. Servs. Corp.*, 659 F. Supp. 1042, 1054 (E.D. Va. 1987) (citing *Havens*, 455 U.S. at 379). *See* Am. Compl. ¶ 250; Ex. 1, Almazan Decl. ¶¶ 14–17; Ex. 2, Crane Decl. ¶¶ 10–16; Ex. 3, Szymanski Decl. ¶¶ 9–12. "Clearly, such injuries are not of a type generally shared by all citizens." *Saunders*, 659 F. Supp. at 1054.

Defendants argument that "mere expense to [an association] does not constitute injury in fact," Defs.' Mem. 20, overstates the holding of *Lane v. Holder*, 703 F.3d 668, 675 (4th Cir. 2012). *Lane* was concerned with organizations circumventing Article III's case or controversy requirement by redirecting limited resources solely "in response to legislation" or "actions of another party[.]" *Id.*; *see also Goldstein v. Costco Wholesale Corp.*, 278 F. Supp. 2d 766, 770–72 (E.D. Va. 2003) (finding lack of standing where organization's "primary source of revenue is litigation directed against alleged discrimination"). Organizational Plaintiffs have had a mission to combat unlawful restraint and seclusion before Defendants' unlawful conduct. Ex. 1, Almazan Decl. ¶¶ 7–14; Ex. 2, Crane Decl. ¶¶ 7–9; Ex. 3, Szymanski Decl. ¶¶ 6–12. They do not assert standing "in reaction to legislation," or "actions of another party," but protect their interests by ensuring their missions are not frustrated by Defendants' discriminatory policies and practices. Am. Compl. ¶ 302. And, under *Goldstein*, little, if any, of Organizational Plaintiffs' resources are derived from litigation. Ex. 1, Almazan Decl. ¶ 18; Ex. 2, Crane Decl. ¶ 17; Ex. 3, Szymanski Decl. ¶ 13. Thus, Defendants' conduct has directly harmed their organizational missions and

their diversion of resources "is proof positive of [their] concrete injury; the resources devoted to" investigating and combating Defendant's practices were "clearly 'diverted.' Nothing more is required." *Equal Rights Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 487 (D. Md. 2007) (citations omitted); *Moseke v. Miller & Smith, Inc.*, 202 F. Supp. 492, 497 (E.D. Va. 2002).[11]

### b.      Representational standing

Organizational Plaintiffs also have standing through their members. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 342 (1977). An organization has representational standing when (1) at least one of its members would have standing to sue in his own right; (2) the organization seeks to protect interests germane to the organization's purpose; and (3) neither the claim asserted nor the relief sought requires the participation of individual members in the lawsuit. *Id.* at 343. Organizational Plaintiffs meet these requirements.

First, Organizational Plaintiffs have identified members that have standing to sue. *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). Some of the Individual Plaintiffs are also members of their organizations. Ex. 1, Almazan Decl. ¶ 19; Ex. 2, Crane Decl. ¶ 18; Ex. 3, Szymanski Decl. ¶ 14. Organizational Plaintiffs have identified other individuals, though have not named them due to fear of retaliation. Ex. 1, Almazan Decl. ¶ 20; Ex. 2, Crane Decl. ¶ 19; Ex. 3, Szymanski Decl. ¶¶ 9–11, 15. These members have suffered injuries that have caused physical and emotional harm as a result of Defendants' misconduct. Ex. 1, Almazan Decl. ¶¶ 21–25; Ex. 2, Crane Decl. ¶¶ 21–25; Ex. 3, Szymanski Decl. ¶¶ 9–11, 16–20; Am. Compl. ¶¶ 116–66, 182–214.

---

[11] Defendants' request to narrow discovery to jurisdictional issues moving forward, Defs.' Mem. 20 n.12, is all but a concession that Organizational Plaintiffs have standing. In any event, limitations on discovery are inefficient and inappropriate where Organizational Plaintiffs have sufficiently pled standing.

Second, Organizational Plaintiffs have a shared mission of ending "systemic mistreatment of persons with disabilities," including unlawfully restraining and secluding children with disabilities. Am. Compl. ¶¶ 34–36, 250–53; Ex. 1, Almazan Decl. ¶¶ 2–13, 25; Ex. 2, Crane Decl. ¶¶ 2–6, 25; Ex. 3, Szymanski Decl. ¶¶ 3–12, 20. Thus, their "litigation goals in this suit are 'germane' to [their] mission[s]." *Council of Parent Attorneys & Advocates, Inc. v. DeVos*, 365 F. Supp. 3d 28, 46 (D.D.C. 2019). "This requirement is not demanding, requiring only that an organization's litigation goals be pertinent to its special expertise and the grounds that bring its membership together." *Id.* (citations omitted).

Third, Organizational Plaintiffs' members do not have to participate in the litigation for this court to issue injunctive and declaratory relief. *Humane Soc'y of the U.S. v. Hodel*, 840 F.2d 45, 53 (D.C. Cir. 1988). Although some Individual Plaintiffs chose to participate, they need not to get the relief Organizational Plaintiffs request. *Village of Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 264 n.9 (1977). Accordingly, Defendants' request to dismiss Organizational Plaintiffs should be denied.

## II.   PLAINTIFFS HAVE SUFFICIENTLY ALLEGED CLAIMS UNDER THE ADA, SECTION 504, AND SECTION 1983 FOR CONSTITUTIONAL VIOLATIONS.

Plaintiffs adequately allege disability discrimination under Title II of the ADA and Section 504, and constitutional violations under Section 1983 and the Fourth and Fourteenth Amendments. Plaintiffs have pled facts showing disability-related behaviors were the motivating factor behind restraining and secluding the Individual Plaintiffs. Defendants' reliance on FCPS Guidelines is of no moment where Plaintiffs have sufficiently pled three separate theories to establish constitutional violations. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

A.    **Plaintiffs plausibly allege violations of the ADA and Section 504, entitling them to relief and full discovery.**

1.    **Plaintiffs allege facts leading to a reasonable inference that Defendants have violated Title II of the ADA and Section 504.**

It is undisputed that Plaintiffs have adequately pled the first two elements of their ADA and Section 504 claims. Defs.' Mem. 23–24.[12] But Defendants argue that Plaintiffs have not articulated how their disabilities "played a motivating role" in the discrimination perpetrated against them. Defs.' Mem. 25. Defendants argument is fatally flawed for several reasons.

First, Defendants conflate "motivating factor" with a more demanding causation standard—one that does not exist under the ADA or Section 504. *Pathways Psychosocial v. Town of Leonardtown, MD*, 133 F. Supp. 2d 772, 781 n.7 (D. Md. 2001) (citing *Baird v. Rose*, 192 F.3d 462, 466 (4th Cir. 1999)). Title II of the ADA provides: "no qualified individual with a disability shall, *by reason of* such disability, be excluded from participation in or be denied the benefits of services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (emphasis added). And Section 504 provides: "No otherwise qualified individual with a disability . . . shall, solely *by reason of her or his disability*, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination" by specified entities. 29 U.S.C. § 794(a) (emphasis added). It is enough, per the statutes, for the disability to be *the reason for* discrimination; it need not be the *motivation*.

Indeed, the ADA prohibits actions that have the *effect* of excluding, denying benefits, or discriminating because of disability. 28 C.F.R. § 35.130(b)(3). Discrimination "because of

---

[12] Plaintiffs seeking relief under the ADA and Section 504 must allege that (1) they have a disability, (2) they are otherwise qualified to receive the benefits of a public service, program, or activity, and (3) they were excluded from participation in or denied the benefits of such service, program, or activity, or otherwise discriminated against, on the basis of her disability. *Constantine*, 411 F.3d at 498.

disability" can take several forms: (1) failure to reasonably modify policies as necessary to avoid discrimination, 28 C.F.R. § 35.130(b)(7); (2) disparate treatment, 28 C.F.R. § 35.130(b)(1); (3) disparate impact, 28 C.F.R. § 35.130(b)(3) and (b)(8); or (4) unnecessarily segregating individuals with disabilities, *Olmstead,* 527 U.S. at 592 (citing 28 C.F.R. § 35.130(d)). Section 504 does not require proof of discriminatory intent because "[d]iscrimination against the handicapped was perceived by Congress to be most often the product, not of invidious animus, but rather of thoughtlessness and indifference—of benign neglect." *Alexander v. Choate*, 469 U.S. 287, 295 (1985).

Although the ADA prohibits disparate treatment and disparate impact discrimination "on the basis of disability," 28 C.F.R. § 35.130(b)(1) and (b)(3), Defendants confuse the requirement that Plaintiffs' disabilities have a causal influence on the discriminatory *outcome* with a requirement that Defendants *made their decisions* because of disability. Rather, "on the basis of disability" means Defendants' conduct harmed Plaintiffs because they have disabilities. *See Erickson*, 207 F.3d at 949. In other words, Plaintiffs allege they were subjected to restraint and seclusion because they have disabilities; they need not also plead that their disabilities motivated Defendants' conduct or resulted from Defendants' discriminatory animus toward them.

Arguing that Plaintiffs' allegations "show that school personnel were motivated by maintaining order in the classroom or other school setting,"—a concession that FCPS Guidelines are not applied appropriately to students with disabilities—Defendants contend that Plaintiffs "make[] several conclusory statements about how FCPS used restraint and seclusion." Defs.' Mem. 25. Defendants' argument is a challenge to the merits of Plaintiffs' case and an impermissible attempt to frame the facts in their favor, rather than Plaintiffs'. *Nemet*, 591 F.3d at 255–56. And Defendants overlook specific factual allegations detailing:

- data revealing Defendants' disproportionately subjected students with disabilities to restraint and seclusion, Am. Compl. ¶¶ 13, 75, 91–94, 196, 276, 282, 290–91;

- Defendants failure to allocate resources to address misuse of restraint and seclusion on children with disabilities, Am. Compl. ¶¶ 89–94;

- media reports investigating these patterns of misconduct perpetrated on children with disabilities, Am. Compl. ¶¶ 95–96;

- a pattern of referring to isolated areas by other names, when relegating students with disabilities to them, to avoid reporting requirements, Am. Compl. ¶¶ 95–98, 126, 225;

- Dr. Brabrand and Ms. Johnson's knowledge of or, at the least, deliberate indifference to, these practices, Am. Compl. ¶¶ 13, 75, 81, 91–94, 96, 103–11, 116–249, 254–55, 276, 282, 290–91; Woolsey, *supra*;

- Defendants' naming of its task force to address restraint and seclusion the "Special Education Task Force," demonstrating that Defendants, themselves, view restraint and seclusion as restricted to use on students with disabilities, Am. Compl. ¶¶ 23, 76–81, 254;

- physical harm and harm perpetrated against Individual Plaintiffs resulting from a manifestation of their disabilities, Am. Compl. ¶¶ 116–249;

- harm to Organizational Plaintiffs' missions and members, Am. Compl. ¶¶ 34–36, 250–53; Ex. 1, Almazan Decl. ¶¶ 3–25; Ex. 2, Crane Decl. ¶¶ 3–25; Ex. 3, Szymanski Decl. ¶¶ 3–20; and

- a complaint pending with OCR for disability discrimination similar to that which Plaintiffs allege, Am. Compl. ¶ 255.

Defendants admit that they are aware that Individual Plaintiffs and Organizational Plaintiffs' members are students with disabilities, a concession that their behaviors are a manifestation of those disabilities. Defs.' Mem. 23–24; Am. Compl. ¶¶ 88, 279. Thus, Plaintiffs have sufficiently alleged disability discrimination. *Compare Constantine*, 411 F.3d at 499; *Baird*, 192 F.3d at 467–68.

Second, Plaintiffs allege disparate impact discrimination, which, by definition, does not require motivation. *See Serrano v. Cintas Corp.*, 699 F.3d 884, 892 (6th Cir. 2012). "A cause of action based upon disparate impact arises where facially neutral rules or policies are applied in a way that affects the protected class differently from other groups." *Bryant Woods Inn, Inc. v. Howard Cty. Md.*, 911 F. Supp. 929, 939, *aff'd*, 124 F.3d 597 (4th Cir. 1997); *accord Equal*

*Rights Ctr. v. Camden Prop. Tr.*, No. CIV. PJM07-2357, 2008 WL 8922896, at *6–8 (D. Md. Sept. 22, 2008). Because of their disabilities, Plaintiffs are disproportionately subjected to restraints and seclusion, and that has the effect of discrimination. Am. Compl ¶¶ 13, 75, 91–94, 196, 276, 282, 290–91; *see also* Woolsey, *supra*.

Third, Plaintiffs allege Defendants have failed to provide reasonable modifications to prevent discrimination and have unnecessarily segregated them. Am. Compl. ¶¶ 8, 17, 21, 84, 95, 113, 229, 259, 269, 279, 290. Neither reasonable modification nor unnecessary segregation claims under the ADA and Section 504 require allegations of discriminatory motivation. A plaintiff need not allege that a reasonable modification was *denied* because of disability. Rather, the modification only must have been *needed* because of the disability. Such a denial of an accommodation that is needed because of disability (and the resulting exclusion from service) is discrimination because of disability. *Cf. Henrietta D. v. Bloomberg*, 331 F.3d 261, 274 (2d Cir. 2003) (citations omitted); *Olmstead,* 527 U.S. at 597. Plaintiffs have sufficiently alleged facts showing disparate impact, failure to accommodate, and unnecessary segregation, regardless of motivation, though they have adequately alleged motivation as well.[13] *Capital One Fin. Corp. v. Kirkpatrick*, No. CIV.A 3:07CV354-HEH, 2007 WL 2247599, at *1 (E.D. Va. Aug. 1, 2007).

### 2.    Organizational Plaintiffs are entitled to all relevant discovery.

Because both Individual and Organizational Plaintiffs have sufficiently alleged facts supporting their ADA and Section 504 claims, they are entitled to full discovery. Defendants

---

[13] Intent is relevant under the ADA and Section 504 only because it is required to receive compensatory damages. *See Baird*, 192 F.3d at 470. Even so, the intent is satisfied if the plaintiff shows that the defendant acted "knowingly, voluntarily, and deliberately," even if the defendant's violations "resulted from mere thoughtlessness and indifference rather than because of any intent to deny Plaintiff's rights." *Paulone v. City of Frederick*, 787 F. Supp. 2d 360, 373–74 (D. Md. 2011) (internal quotation marks omitted). As argued, Plaintiffs have met that standard.

make no argument that limitations on discovery apply in this case. *Nicholas v. Wyndham Int'l Inc.*, 373 F.3d 537, 543 (4th Cir. 2004) (citing Fed. R. Civ. P. 26(b)(2)). It would be premature to grant their request, particularly when Defendants' conduct of restraining and secluding students with disabilities shows ongoing violations and, thus, the one-year statute of limitations would not apply. *Cf. Moseke*, 202 F. Supp. 2d at 507–09; *Constantine*, 411 F.3d at 496.

**B.     Plaintiffs have sufficiently alleged claims under Section 1983 for violations of the Fourth and Fourteenth Amendments.**

Plaintiffs have adequately alleged three theories of liability to support their constitutional claims that Defendants have a "policy, practice, pattern, and/or custom of discriminating against Plaintiffs," Am. Compl. ¶ 302. First, Defendants' use of restraint and seclusion on students with disabilities is a "decision officially adopted and promulgated by" Defendants that violates the constitutional rights of students with disabilities. *Monell*, 436 U.S. at 690; *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999). Plaintiffs' Amended Complaint is rife with examples demonstrating students with disabilities are subjected to a policy on restraint and seclusion that differs from FCPS Guidelines. *E.g.,* Am. Compl. ¶¶ 44, 49, 70, 71, 84–85, 113, 304; Defs.' Mem. 25. Defendants knowingly and falsely reported zero instances of restraint and seclusion to the Federal government. Am. Compl ¶¶ 101, 139. Tina Wilkerson, a direct subordinate to Ms. Johnson, acknowledged as much in an IEP meeting. Am. Compl. ¶ 206. In at least one instance, Dr. Brabrand knew of Defendants' alleged unlawful treatment of J.M. Am. Compl. ¶ 212. Because "[t]he recitation of facts need not be particularly detailed, and the chance of success need not be particularly high," *Owens*, 767 F.3d at 403, these allegations suffice.

Second, Defendants deprived Plaintiffs of their constitutional rights based on a "governmental 'custom' even though such custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 691. "Outside of such formal

decisionmaking channels, a municipal custom may arise if a practice is so 'persistent and widespread' and 'so permanent and well settled as to constitute a 'custom or usage' with the force of law.'" *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir.1999) (citation omitted). A custom "may be attributed to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees." *Spell v. McDaniel*, 824 F.2d 1380, 1387 (4th Cir. 1987). As alleged, Defendants have, for years, engaged in persistent, widespread unjustified restraints and seclusions on children with disabilities. Am. Compl. ¶ 76–81, 88, 98, 101–09, 116–254; Defs.' Mem. 25. In Dr. Brabrand's own words: "It is clear that as a system, [Defendants] have fallen short[.]" Am. Compl. ¶ 106. Plaintiffs' claims are not limited to "isolated constitutional deprivations," *Milligan v. City of Newport News*, 743 F.2d 227, 230 (4th Cir. 1984), but systemic practices that require remediation. *Carter*, 164 F.3d at 218; *Owens*, 767 F.3d at 403. As a direct and proximate cause of Defendants' actions and inactions, Plaintiffs have been deprived of their Fourth and Fourteenth Amendment rights. Am. Compl. ¶¶ 294–305.

Defendants either knew or were deliberately indifferent to these widespread practices. *Jones v. Welham*, 104 F.3d 620, 626 (4th Cir. 1997) (citations omitted). The sheer volume of over 1,000 known incidents alleged in the Amended Complaint is sufficient to give rise to such an inference. Am. Compl. ¶¶ 103–111, 116–249. Defendants were on notice as early as 2015 about a complaint filed with OCR alleging similar violations of federal law. Am. Compl. ¶ 255. Nevertheless, they falsely reported zero instances of restraint and seclusion. Am. Compl. ¶¶ 116, 151, 155, 183, 194. Defendants' statistics on restraint and seclusion further identify disproportionate use of restraints and seclusions for non-emergency situations on students with disabilities. Am. Compl. ¶¶ 13, 75, 91–94, 96, 276, 282, 290–91; Woolsey, *supra*. These

allegations are sufficient to avoid dismissal. *Owens*, 767 F.3d at 403.

Third, Defendants have failed to adequately train their subordinates. *City of Canton*, 489 U.S. at 389 ("[W]here a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants . . . such a shortcoming [can] be properly thought of as a . . .'policy or custom' that is actionable under § 1983."). Plaintiffs adequately allege that Defendants have failed to properly "train, oversee and hold their employees accountable for such physical and psychological punishments" perpetrated against students with disabilities "in derogation of" their constitutional rights. Am. Compl. ¶¶ 8, 15, 89, 116–249, 255, 277, 294–305. It is inconceivable that such a stark departure from FCPS Guidelines could be anything else. Am. Compl. ¶¶ 116–249; Woolsey, *supra*. Accordingly, Plaintiffs' are entitled to systemic relief available under Section 1983.

## III.   DR. BRABRAND AND MS. JOHNSON ARE PROPER DEFENDANTS AND IT WOULD BE PREMATURE TO DISMISS THEM AT THIS STAGE.

Defendants do not dispute that state officials such as Dr. Brabrand and Ms. Johnson may be sued in their official capacities under Title II of the ADA. *Lytle v. Griffith*, 240 F.3d 404, 408 (4th Cir. 2001). Although suits against school officials may be dismissed when claims are "duplicative," *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004), when specific injunctive relief is directed at decisionmakers in their official capacity, they are necessary parties. *Shepard*, 77 F. App'x at 620. Dismissing Dr. Brabrand and Ms. Johnson is inappropriate at this stage because they would be responsible for implementing the systemic changes Plaintiffs' request. Am. Compl. ¶ 259; *Shepard*, 77 F. App'x at 620.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Respectfully submitted,

/s/ Kevin Byrnes
Kevin E. Byrnes, VSB No. 47623
Fluet Huber + Hoang, PLLC
1751 Pinnacle Drive
10th Floor
Tysons, Virginia 22102
T: (703) 590-1234
F: (703) 590-0366
kbyrnes@fhhfirm.com

Regina Kline (*pro hac vice*)
Eve L. Hill (*pro hac vice*)
Sharon Krevor-Weisbaum (*pro hac vice*)
Anthony J. May (*pro hac vice*)
BROWN, GOLDSTEIN & LEVY, LLP
120 East Baltimore Street, Suite 1700
Baltimore, Maryland 21202
T: (410) 962-1030
F: (410) 385-0869
RKline@browngold.com
EHill@browngold.com
SKW@browngold.com
AMay@browngold.com

*Counsel for Plaintiffs*

February 12, 2020

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 12th day of February, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all parties and counsel of record.

/s/ Kevin Byrnes
Kevin E. Byrnes, VSB No. 47623