**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | |
|---|---|
| Q.T., *et al.*, | * |
| Plaintiffs, | * |
| v. | * |
| | CASE NO. 1:19-cv-01285 (RDA/JFA) |
| FAIRFAX COUNTY SCHOOL | * |
| BOARD, *et al.*, | * |
| Defendants. | * |
| | * |

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY**
**IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Defendants Fairfax County School Board, Superintendent Scott Brabrand, and Assistant Superintendent, Department of Social Services, Teresa Johnson, filed their Motion to Dismiss on January 13, 2020, *see* ECF No. 19, and Plaintiffs filed their Opposition to Defendants' Motion to Dismiss on February 12, 2020, *see* ECF No. 24 ("Opposition"). Plaintiffs file this Notice of Supplemental Authority to advise the Court of several cases that have occurred since the filing of the initial briefs by the parties.

Plaintiffs' rationale for providing these supplemental authorities is simple and straightforward: actions that invade and defeat the rights of students with disabilities are distinguishable from the rights accorded to children in school settings under the Individuals with Disabilities Education Act ("IDEA"). In evaluating which set of rights are implicated, the Court is to look at the nature of the violation, not its geographical setting. The following cases reiterate the central premise of Plaintiffs' case that restraint and seclusion are not educational services and that usage of such methods must be viewed through the protections accorded under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, *et seq.*, and Section 504 of the

Rehabilitation Act ("Section 504"), 29 U.S.C. § 794. Such claims need not be exhausted and, in the face of any motion to dismiss, must be viewed as fact matters requiring discovery.

Responding to Defendants' suggested cases also makes sense, *see* June 12, 2020 E-mail from Maya Eckstein, attached hereto as Ex. A, as it addresses, in a single filing, the implications and distinguishing factors of those rulings. Defendants' case authority is based on matters involving the provision of specific educational services, which are statutorily and logically connected to the individualized inquiry that the IDEA embodies. But systemic physical and emotional abuse, forced isolation, segregation, and employment of punitive and quasi-law enforcement tactics against children with disabilities are not and never can be equated to an "educational service." They are in fact the antithesis of it. Defendants' cases prove Plaintiffs' point.

I.     **Plaintiffs' Supplemental Authorities**

In *Doe v. Township High School District 214*, No. 19-cv-3052, 2020 WL 1081726, at *1 (N.D. Ill. Mar. 6, 2020), attached hereto as Exhibit B, a minor plaintiff filed suit against a school district under Section 504. The student alleged that the school district had "engaged in a practice of targeting students with disabilities . . . for harassment, unwanted negative attention and discipline." *Id.* at *2. Plaintiff claimed that the school district "failed to provide [him], a person with disabilities, the same access, use and enjoyment of education as other students" because of his disabilities, and that the "unequal treatment occurred because of his disabilities." *Id.* The district moved to dismiss citing some of the same grounds alleged by Defendants here. The *Doe* Court denied defendants' motion seeking dismissal for a failure to exhaust administrative remedies under the IDEA and *Fry v. Napoleon Community Schools*, 137 S. Ct. 743 (2017).

The court expressly found that "[n]otwithstanding the complaint's language regarding the educational limits [p]laintiff ran up against, the crux of the complaint is directed toward

2

discrimination that had nothing to do with a [Free Appropriate Public Education ("FAPE")], and therefore this count may proceed." *Doe*, 2020 WL 1081726, at *5. The court noted that the substance of the conduct at issue was dispositive. It explained that "the Supreme Court has cautioned against looking at the surface . . . of a complaint" and that "allusions to . . . educational opportunities cannot be dispositive." *Id.* The court stated that "although hard to divorce from the context of him being a student," student status was not preclusive or dispositive. *Id.* The plaintiff "could present a cause of action in other contexts." *Id.* (internal citations and quotations omitted). Thus, "'being excluded and isolated from his classroom and peers on the basis of disability,'" although it could constitute a violation of the complaining student's individual education plan "was not, first and foremost, related to his FAPE." *Id.* The court further noted that as an adult "could press the same claims," for disability discrimination, the complaint could proceed and administrative exhaustion under the IDEA was not necessary. *Id.*

Here, Plaintiffs allege the same Section 504 violations. Opposition 1. Plaintiffs allege that the "Defendants have routinely and unnecessarily inflicted restraint and seclusion on students with disabilities because of their disability-related behaviors," *id.* at 3, *i.e.*, they were "harassed by school administrators and singled out for isolation, investigation, and punishment because of [their] disabilit[ies]," *Doe*, 2020 WL 1081726, at *5.

Moreover, Plaintiffs do not make requests for educational services. Rather, their claims directly relate to "discrimination on the basis of disability," and even though "such treatment indirectly [impedes their] access to a FAPE[.]" *id.*, the issue is discrimination based on disability itself. This makes eminent sense as the IDEA is not a shield against the ADA, it is constructed to assure the creation of a student specific plan to allow the provision of a free appropriate education. When the allegations are about the mistreatment and abuse of children with

disabilities themselves, however, the ADA and Section 504 create remedies for discrimination based on such conduct.

In *The Georgia Advocacy Office v. State of Georgia*, --- F. Supp. 3d ---, 2020 WL 1650434, at \*1 (N.D. Ga. Mar. 19, 2020), attached hereto as Exhibit C, the court ruled that IDEA exhaustion did not preclude an action by advocacy groups under the ADA against the State of Georgia. The court found that plaintiffs' claims that the State of Georgia "unnecessarily removes students from general education classrooms, leading to stigmatization and a poor education," *The Georgia Advocacy Office*, 2020 WL 1650434, at \*1, while tied to plaintiffs' "status as students," does not preclude an action where "stigmatization is the gravamen of the complaint," *id.* at \*10. In such a circumstance, "[p]laintiffs did not have to exhaust their remedies under the IDEA." *Id.* Equally as important for this action, the district court agreed that plaintiffs had properly asserted an "*Olmstead* claim"[1] because they adequately alleged that students with disabilities were being unlawfully segregated when they "could be educated in a more integrated setting" and "the schools can be reasonably accommodated" to allow students to be educated in a more inclusive setting. *Id.* at \*7.[2]

Accordingly, *Georgia Advocacy Office* establishes that repeated isolation, unlawful restraint, and unjustified segregation of schoolchildren with disabilities while in Defendants' care, custody, and control is discrimination resulting from disability status. Opposition 24–27. *Georgia Advocacy Office* also buttresses Plaintiffs' contention that Title II of the ADA and their *Olmstead* claims support a prayer for relief against the unlawful and discriminatory use of

---

[1] *See generally Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999).

[2] While the syntax is difficult to follow, the decision supports the notion that plaintiffs properly pled their *Olmstead* claim, which afforded them relief under the ADA, and that exhaustion of that claim under the IDEA was not required.

restraint, seclusion, and unjustified segregation. Opposition 18–19, 25–27. As the court in *Georgia Advocacy Office* explained, the integration regulation in Title II of the ADA "requires a 'public entity [to] administer . . . programs . . . in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 2020 WL 1650434, at *7 (citing 28 C.F.R. § 35.130(d)). Thus, when this right is violated, it is actionable under Title II itself.

In the instant action, Plaintiffs allege, *inter alia*, that, due to unlawful restraint and seclusion, they have been illegally segregated in violation of Title II of the ADA's integration mandate. *See* Pl.s' Am. Compl., Dec. 13, 2019, ECF No. 17  ("Am. Compl.") ¶¶ 2, 20, 22, 75, 89, 91, 265, 270, 281. This violates the mandate that Defendants "must provide [integrated] services to [students] with disabilities when: (1) the services are appropriate; (2) the [students] do not oppose the services; and (3) the [defendants] can reasonably accommodate the" integrated services. *Georgia Advocacy Off.*, 2020 WL 1650434, at *7. In rejecting defendants' arguments that plaintiffs failed to state a claim under Title II and *Olmstead*, the Georgia court recognized and affirmed that Title II and *Olmstead* allow and provide for the very remedies Plaintiffs seek in their Amended Complaint. *Id.* at *7–8. Such a judicial issued statement gives short shrift to the Defendants self-serving surmise that the *Olmstead* Court's "holding was modest." *See* Def.s' Reply in Supp. of Mot. to Dismiss, Feb. 21, 2020, ECF No. 25, 13–14.

In *S.C. v. Round Rock Independent School District*, No. A-19-CV-1177-SH, 2020 WL 1446857, at *9 (W.D. Tex. Mar. 25, 2020), attached hereto as Exhibit D, the court denied defendant's motion to dismiss plaintiff's ADA and Section 504 claims on grounds similar to those raised by Defendants. The *S.C.* Court rejected defendants' 12(b)(1) motion to dismiss on jurisdictional ground, noting that "exhaustion of administrative remedies under the Rehabilitation Act and ADA is not a jurisdictional requirement[.]" *Id.* at *4. Such a ruling

directly undermines the Defendants' contention that dismissal for failure to exhaust is a jurisdictional issue. *See* Def.s' Mem. in Supp. of Mot. to Dismiss, Jan. 13, 2020, ECF No. 19, 9–13; *see also* Opposition 6 n.1.

The United States District Court for the Western District of Texas also found that the plaintiff's ADA and Section 504 claims do not require exhaustion because the complaint was focused principally on harm caused by the failure of defendants to provide accommodations for plaintiff's Anorexia Nervosa, which then led to a "'psychic and physical tailspin,'" for plaintiff. *S.C.*, 2020 WL 1446857, at *2. The fact that the plaintiff in *S.C.* had filed an administrative action under the IDEA concerning the same claims contained in her lawsuit, (which was dismissed as untimely), did not defeat the ADA and 504 claims. *Id.* at *4. The court found that, despite plaintiff's purported attempts to exhaust under the IDEA, "the substance of [plaintiff's] Complaint largely focuse[d] on" her disabilities and the ADA's and Section 504's "promise of 'non-discriminatory access to public institutions.'" *Id.* at *7 (citations omitted).

*S.C.* focused on the nature of the injury, not the setting. Thus, because the gravamen of Plaintiffs' Amended Complaint is Defendants' unlawful reliance on restraint and seclusion, without considering other responses that could accommodate the disability, the claim is one under the ADA. Opposition 7–12.

In *A.K.B. By & Through Silva v. Independent School District 194*, No. 19-CV-2421 (SRN/KMM), 2020 WL 1470971, at *1 (D. Minn. Mar. 26, 2020), attached hereto as Exhibit E, parents of a child with disabilities filed suit against a school district for "fail[ing] to formulate a [] plan to address" their child's asthma "and [the] need for accommodations[.]" *Id.* at *2. The complaint further alleged that as a direct result of that failure, the plaintiff suffered "prolonged oxygen deprivation" that led to "extensive, permanent brain damage." *Id.* The parents sought

damages arising from the district's failure to provide accommodations. Initially, plaintiff filed an administrative action "to exhaust their administrative remedies in anticipation of filing other civil claims against the School District." *Id.* at *3. The administrative action was dismissed because the remedies plaintiffs sought were "beyond the reach of the IDEA and its remedies . . . ." *Id.* The parents then filed a civil action. The school district moved to dismiss the action for failure to exhaust under the IDEA. *Id.* at *4. The court dismissed this gambit.

Focusing on the conduct at issue, the court determined "that the District is only the 'location' of the discrimination alleged," and as plaintiffs "could have brought essentially the same Complaint if the alleged conduct occurred at another public facility" and where "the District's adult employees, could have pressed essentially the same grievance," *id.* at *6, the action could be maintained and need not be exhausted.

*A.K.B.* establishes that compensatory relief for damages due to unlawful use of restraint and seclusion are not forms of relief provided by an IDEA due process hearing. Opposition 15, 17–19. Defendants' failure to provide reasonable accommodations to students with disabilities and the harm caused by unlawful use of restraint and seclusion is a right that could have been asserted by any adult employee at the school. *See id.* at 7–11. The school was merely the location the harm was perpetrated. There is no protection for the abuser because they choose a school setting for the misconduct. *Id.* at 9.

In *A.F. by & through Fournier v. Portland Public School District*, No. 3:19-CV-01827-BR, 2020 WL 1693674, at *3 (D. Or. Apr. 7, 2020), attached hereto as Exhibit F, the United States District Court for the District of Oregon found that a student with autism, who sued a school district for refusing "to accommodate him by denying him access to medically necessary mental-health care while at school" was not bringing an IDEA claim subject to exhaustion. The

7

court ruled that as "[t]he lack of treatment dramatically impairs [p]laintiff's ability to function in any setting, including school." *Id.* at *4. Thus, the "substance of [p]laintiff's claim is the need to receive mental-health treatment in the educational setting rather than mere access to educational services . . . [which] is not subject to the exhaustion requirements of the IDEA." *Id.* Similarly, Plaintiffs here "challenge policies that have the effect of discriminating against such students with disabilities on the basis of disability." *Id.* (citations omitted); *see also id.* at 5, 7–10, 13 n.6.

In *United States v. State of Georgia*, No. 1:16-CV-03088-ELR, slip op. at 2 (N.D. Ga. May 13, 2020), attached hereto as Exhibit G, the district court ruled that claims that the State of Georgia discriminated against "thousands of public school students with behavior-related disabilities" in violation of Title II of the ADA by "unnecessarily segregating them, or by placing them at serious risk of segregation in a separate and unequal educational program known as the Georgia Network for Educational and Therapeutic Support Program[.]" The United States further alleged that "such isolation and segregation of these students violates the ADA's mandate that public entities 'administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.'" *Id.* IDEA exhaustion was not required because "like many Title II violation cases, Plaintiff alleges far more than simply the denial of a FAPE . . . ." *Id.* at19. The court reasoned that "systematic discriminatory practices which result in unlawful stigmatization, deprivation of advantages that come from integrated learning environments, denial of access to public institutions, and unjustified segregation and discrimination of children" with disabilities are the types of claims that go "much further" than the mere denial of FAPE. *Id.* at 19–20.

Plaintiffs arguments in the instant action allege violations of Title II's integration mandate, Am. Compl. ¶¶ 2, 20, 22, 75, 89, 91, 265, 270, 281; request relief pursuant to

*Olmstead*, Opposition  17–19, 25–27; and assert that the systemic abuse, isolation, and

segregation of students with disabilities entrusted to Defendants' care. These claims implicate

"discriminatory practices" that go "much further" than the mere denial of FAPE, *id.* at 5–15.

In *Piotrowski on behalf of J.P. v. Rocky Point Union Free Sch. Dist.*, No.

18CV6262RRMSIL, 2020 WL 2836792, at *3–4 (E.D.N.Y. May 28, 2020), attached hereto as

Exhibit H, a student sued a school district under the ADA, Section 504, and 42 U.S.C. § 1983 for

failure to accommodate his Type 1 diabetes, which took the form in part of punishing Plaintiff

for using his cell phone, "despite defendants' knowledge that [the student] used his cell phone to

monitor his blood sugar[.]" Defendants moved to dismiss, alleging the court lacked jurisdiction

because the plaintiff failed to exhaust under the IDEA. *Id.* at 4–5. The court summarily rejected

the argument, finding "that the claims that [plaintiff] advances are beyond the reach of the

IDEA's exhaustion requirement" because "the gravamen of the complaint concerns [plaintiff's]

discriminatory discipline and suspension from school, which extends well beyond denial of a

FAPE." *Id.* at 7.

In *Clines v. Special Admin. Bd. Transitional School District of the City of St. Louis,* No.

4:18-CV-00153-NAB, 2020 WL 3036053, at *1 (E.D. Mo. June 5, 2020), attached hereto as

Exhibit I, plaintiff, a child with autism, kicked the defendant, who was one of his instructors.

After the defendant tried and failed to de-escalate the situation, he threw the plaintiff to the

ground, which broke the plaintiff's bones and dislocated his shoulder. *Id.* at *1. The child sued

alleging violations of 42 U.S.C § 1983. In assessing whether the attack on the student concerned

a denial of FAPE, the court concluded that "[t]he crux" of the allegations was "not [the

defendant's] failed attempts to use de-escalation techniques," but, rather, defendant's "'forceful

and violent action.'" *Id.* at 5. Because plaintiff "could have brought a claim for this conduct had

it occurred at a non-school public facility, and an adult employee or visitor of the school could similarly bring claims for redress of the resulting injuries," the court found that the IDEA exhaustion requirement did not apply under the circumstances. *Id.*

Adding to this body of case law, the U.S. Government Accountability Office ("GAO") issued findings in April 2020 addressing widespread underreporting of restraint and seclusion in public schools. *See* U.S. Gov't Accountability Off., GAO-20-345, K-12 Education: Education Needs to Address Significant Quality Issues with Its Restraint and Seclusion Data (Apr. 2020), https://www.gao.gov/assets/710/706269.pdf [hereinafter, "2020 GAO Report"], attached hereto as Exhibit J. According to the GAO, schools consistently underreport restraint and seclusion, which "is particularly concerning because . . . students with disabilities [] are disproportionately affected" by those practices. *Id.* at 1; *see also id.* at 13 ("[D]ata show[s] that restraint and seclusion disproportionately affect students with disabilities and its data quality review showed that substantial portions of districts of all sizes inaccurately reported zeros.").

The GAO noted that "about one-third of large and one-fourth of very large districts reported zero incidents" of restraint and seclusion during the 2015-2016 school year. *Id.* at 12. Such deceptive practices "have consequences for the students who are restrained or secluded in school and whose restraint or seclusion goes un-reported." *Id.* at 29. As the GAO noted "[w]hen federal data are misreported to the public, it undermines confidence in that data and fails to provide decision makers with reliable information on which to make informed policy decisions to protect students." *Id.*

The 2020 GAO Report supports Plaintiffs' claims that: (1) students with disabilities are disparately impacted by Defendants' unlawful use of restraint and seclusion, Opposition 26–27; (2) that the failure to accurately report instances of restraint and seclusion is systemic and, thus

supports claims under the ADA, Section 504, and 42 U.S.C. § 1983 that need not be exhausted under the IDEA, *id.* at 12–15, 23–30, *see also* 2020 GAO Report at 2 n.3; and (3) Plaintiffs, including Organizational Plaintiffs, should have standing to bring suit, particularly where the Federal Government is ill-equipped to address these systemic issues, Opposition 17–23.

## II.   Defendants' Supplemental Authorities

Defendants have notified Plaintiffs that they intend to rely on at least six authorities purportedly supporting their Motion to Dismiss. *See* Ex. A. However, Defendants' reliance on these authorities is misplaced, as they are readily distinguishable from the facts presented in this case.

First, Defendants rely on an unpublished opinion by the Ninth Circuit in *A.L. by & through Lee v. Clovis Unified School District*, 798 F. App'x 163 (9th Cir. 2020), attached hereto as Exhibit J. In this two page opinion, the Ninth Circuit provides no analysis or description of the facts or issues in the case, other than a general statement that the appellants' federal claims alleging "segregation from the school's general population" and requesting a school "change its policy of prohibiting aids form communication with parents . . . are topics typically discussed when crafting a FAPE." *Id.* at 164. Moreover, the Ninth Circuit references that appellants "settled their IDEA claims without receiving an administrative decision," *id.*, indicating that an IDEA action was first pursued, which is not the case here because the IDEA does not afford relief to the Plaintiffs for their claims, Opposition 13–15. Further, the underlying district court opinion, available to Defendants at the time they filed their Motion to Dismiss, but which they did not avail themselves of or refer to in earlier briefing, is irrelevant to the issues presented in this case concerning Plaintiffs' allegations of systemic abuse, isolation, and segregation in violation of Title II's integration mandate.

Defendants' also purport to rely on *Angela B. v. Dallas Independent School District*, No. 3:20-CV-0188-D, 2020 WL 2101228, at *5 (N.D. Tex. May 1, 2020), attached hereto as Exhibit K, where the court ruled that the gravamen of plaintiffs' claims was the denial of education services for failure to "adopt a plan individualized to the student's needs" to "correct dyslexia intervention . . ." Here, the crux of Plaintiffs' Amended Complaint does not allege that Defendants failed to adopt individual, specific educational plans as in *Angela B.*; instead, it asserts, *inter alia*, that students with disabilities are systematically and disparately subjected to physical assault, restraint, and isolation because of their disabilities in violation of Title II of the ADA and Section 504. Opposition 2, 10, 25–27. Thus, *Angela B.* is irrelevant to Plaintiffs' systemic claims.

*Sorah v. Tipp City Exempted Village School District Board of Education*, No. 3:19-CV-120, 2020 WL 1242882, at *1 (S.D. Ohio Mar. 16, 2020), attached hereto as Exhibit L, involved a student with disabilities who was suspended for possession of "tobacco and a vape pen" and later expelled "after a wooden pipe, rolling papers and empty tobacco wrappers were found in his care on school property." *Id.* Upon his return, the school reduced his education schedule and he "was not given visual supports or frequent checks of his comprehension" in accordance with his Section 504 plan. Plaintiffs alleged that "[a]s a result of [d]efendants' discriminatory practices, [plaintiff] suffered a compromise in his education." *Id.* The court dismissed his claims, finding that the substance of plaintiff's complaint was the denial of FAPE because the allegations surrounding his punishment were directly linked to requirements outlined in the IDEA governing suspension of individuals with disabilities. Notably, the plaintiff in *Sorah* was never physically abused, held down, placed in isolation for several minutes at a time, or consistently segregated

12

from the general education population. Thus, *Sorah* is of no import to the issues presented in this case.

Defendants also point to *T.R. v. School District of Philadelphia*, No. CV 15-4782, 2020 WL 2100945, at *1 (E.D. Pa. Apr. 30, 2020),[3] attached hereto as Exhibit M. *T.R.* is distinguishable because it involves allegations that the school district failed to provide "translation and interpretation services to limited English proficient parents of the ability to meaningfully participate in the special education process and the development of" IEPs. *Id.* While the *T.R.* court found that such services are inextricably intertwined with a student's right to FAPE, individual educational services directly linked to the IEP process like those discussed in *T.R.* are completely divorced from the relief sought by plaintiffs here, *e.g.*, systemic changes to Defendants' use of physical restraint, seclusion, and segregation of students with disabilities as punitive measures for students' disability-related behaviors.

Similarly, Defendants' reliance on *Donohue v. Lloyd*, No. 18-CV-9712 (JPO), 2020 WL 2834207, at *1 (S.D.N.Y. June 1, 2020), attached hereto as Exhibit N, is equally misguided. *Donohue* involved claims of a parent against New York City and State entities involving certain alleged discriminatory conduct and retaliation "during a hearing regarding [a student's] placement for the 2018-2019 school year." *Id.* As Plaintiffs have explained, a challenge to placement is completely irrelevant to the relief Plaintiffs seek here, "e.g., provision of basic reasonable accommodations, requiring staff training on supporting students with disabilities, restricting restraint and seclusion, and performing district-wide data collection[.]" Opposition 12.

---

[3] *T.R.* is currently on appeal to the United States Circuit Court of Appeals for the Third Circuit.

Finally, Defendants intend to rely on *J.F. v. San Diego County Unified School District*, No. 19-CV-2495-CAB-LL, 2020 WL 1692534, at *1 (S.D. Cal. Apr. 7, 2020),[4] attached hereto as Exhibit O. Again, this case misses the mark. The plaintiff in *J.F.* brought claims under the IDEA alleging that the school district failed to provide him with a 1:1 aide, "which has resulted in an escalation of problematic behaviors and unnecessary difficulties, ultimately denying Plaintiff . . . a proper education." *Id.*

The demarcation in Defendants' cases are that they all involve an education service that could be subject to some form of negotiation and provision under the IDEA. The Plaintiffs here are not advocating for educational services to assist them in obtaining their educations. Indeed, the use of physical force, physical restraint, forced isolation, segregation, humiliation, and scorn, unrecorded, in secret, without notice or input from parents, the student, or trained professionals, has nothing whatsoever to do with the IDEA. It is a perversion of the IDEA to contend that it can be twisted into a defense against violations of the basic rights of people with disabilities. To claim that this complaint seeks vindication of some educational right, subject to contractual negotiation misses the mark.

Defendants' purported supplemental authorities have one thing in common: they all have nothing to do with the conduct alleged in Plaintiffs' Amended Complaint. None of the parents or children involved in this case negotiated a contract that allowed the student to be hit, dragged, held down, placed in confinement, denied access to their parents, or have their suffering go unreported and hidden. Try as they might, Defendants cannot and should not be allowed to recast brutality as some form of education benefit. Segregation and isolation do not foster the educational setting, they deny it. Dragging a child with disabilities down a hallway in tow by

---

[4] *J.F.* is currently on appeal to the United States Circuit Court of Appeals for the Ninth Circuit.

grown men and women with positions of authority may teach something about how Defendants view students with disabilities, but it has nothing to do with providing a child an education.

## **CONCLUSION**

For the reasons set forth above and in Plaintiffs' Opposition, Plaintiffs respectfully request that this Court grant Plaintiffs' Motion for Leave to File Notice of Supplemental Authority and deny Defendants' motion to dismiss.

Dated:  June 23, 2020

Respectfully submitted,

/s/ Kevin Byrnes
Kevin E. Byrnes, VSB No. 47623
Fluet Huber + Hoang, PLLC
1751 Pinnacle Drive
10th Floor
Tysons, Virginia 22102
T: (703) 590-1234
F: (703) 590-0366
kbyrnes@fhhfirm.com

Regina Kline (*pro hac vice*)
Eve L. Hill (*pro hac vice*)
Sharon Krevor-Weisbaum (*pro hac vice*)
Anthony J. May (*pro hac vice*)
BROWN, GOLDSTEIN & LEVY, LLP
120 East Baltimore Street, Suite 1700
Baltimore, Maryland 21202
T: (410) 962-1030
F: (410) 385-0869
RKline@browngold.com
EHill@browngold.com
SKW@browngold.com
AMay@browngold.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 23, 2020, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record for all parties.

*/s/ Kevin Byrnes*

Kevin E. Byrnes, VSB No. 47623