**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | | |
|---|---|---|
| Q.T., *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | |
| | | CASE NO. 1:19-cv-01285 (RDA/JFA) |
| FAIRFAX COUNTY SCHOOL BOARD, *et al.*, | * | |
| | * | |
| Defendants. | | |
| | * | |
| | * | |

**PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

This submission follows the Court's ruling authorizing Plaintiffs to file supplemental authority based on developments in case law on the issue of restraint and seclusion in schools and the distinctions as to whether such claims are viewed under: (1) the Individuals with Disabilities Education Act ("IDEA"); or (2) the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). The IDEA requires a particularized inquiry into the provision of specialized educational services for students with disabilities to ensure they obtain appropriate educational opportunities, requiring exhaustion; the ADA and Section 504 protect individuals with disabilities and prohibit discriminatory policies and practices, conduct for which no exhaustion is required.

On January 13, 2020, Defendants filed a Motion to Dismiss, *see* ECF No. 19. On February 12, 2020, the Plaintiffs submitted their Opposition, *see* ECF No. 24. Since that time, several district courts have addressed cases involving similar dispositive motions on the grounds advanced by Defendants. The rulings cited by Plaintiffs, all of which occurred since the filing of the Opposition, stand for the proposition that systemic disability discrimination may be

challenged under the ADA without the need for exhaustion because such forms of discrimination cannot be conflated with the failure to provide educational services under the IDEA. In addressing this distinction, the cases cited by Plaintiffs reinforce that courts look to the nature of the alleged harm, not its geographical setting, to determine whether the ADA is implicated. The fact that the harm occurs in a school does not, as Defendants suggest, obviate ADA liability.

Defendants' referenced case authority, *see* Ex. A, June 12, 2020 E-mail from Maya Eckstein, not only fails to blunt this central premise, it supports it. Indeed, these cases involve the provision of specific educational services. Defendants' cases are irrelevant to the claims in Plaintiffs' Amended Compliant, which address the systemic physical and emotional abuse, forced isolation, segregation, and disparate treatment of students with disabilities. Defendants' actions do no implicate educational services; instead, they are odious violations of the basic rights of children with disabilities that occur in a school setting.

## I. Plaintiffs' Supplemental Authorities

In *Doe v. Township High School District 214*, No. 19-cv-3052, 2020 WL 1081726, at *2 (N.D. Ill. Mar. 6, 2020), attached hereto as Exhibit B, a minor plaintiff alleged that a school district had "engaged in a practice of targeting students with disabilities . . . for harassment, unwanted negative attention and discipline," in violation of Section 504. The complaint asserted that the defendant school district "failed to provide [him], a person with disabilities, the same access, use and enjoyment of education as other students" and instead "unequal treatment occurred because of his disabilities." *Id.*

The court denied a motion to dismiss: "Notwithstanding the complaint's language regarding the educational limits [p]laintiff ran up against, the crux of the complaint is directed toward discrimination that had nothing to do with a [Free Appropriate Public Education, i.e.,] FAPE[.]" *Id.* at *5. The court explained that "the Supreme Court has cautioned against looking at

the surface . . . of a complaint" and "allusions to . . . educational opportunities cannot be dispositive." *Id.* Thus, although the allegations raised by the plaintiff were "hard to divorce from the context of him being a student," that was neither preclusive nor dispositive because plaintiff "could present a cause of action in other contexts." *Id.* (internal citations and quotations omitted). The court further ruled that an adult with a disability "could press the same claims," for discrimination. *Id.*

In this case, Plaintiffs allege that "Defendants have routinely and unnecessarily inflicted restraint and seclusion on students with disabilities because of their disability-related behaviors," Opposition 3. Similar to *Doe*, Plaintiffs have been "harassed by school administrators and singled out for isolation, investigation, and punishment because of [their] disabilit[ies]." 2020 WL 1081726, at *5. Such conduct amounts to "discrimination on the basis of disability," and does not require administrative exhaustion although "such treatment indirectly [impedes their] access to a FAPE[.]" *Id*. This is because the allegations Plaintiffs raise are not directed at acquiring educational services, they are directed at misconduct against the students themselves.

In *The Georgia Advocacy Office v. State of Georgia*, --- F. Supp. 3d ---, 2020 WL 1650434, at *1 (N.D. Ga. Mar. 19, 2020), attached hereto as Exhibit C, the court denied a motion to dismiss based on IDEA exhaustion where advocacy groups asserted that Georgia "unnecessarily removes students from general education classrooms, leading to stigmatization and a poor education." Although plaintiffs' status as students was clear, "stigmatization" was nevertheless "the gravamen of the complaint," and "[p]laintiffs did not have to exhaust their remedies under the IDEA." *Id.* at *10.

The court further found that plaintiffs had properly raised an "*Olmstead* claim"[1] based on unlawful segregation because they asserted that they "could be educated in a more integrated setting" and "reasonably accommodated" by allowing students to be educated in a more inclusive setting. *Id.* at *7. The court found that the facts alleged implicated the integration regulation in Title II of the ADA, which "requires a 'public entity [to] administer . . . programs . . . in the most integrated setting appropriate to the needs of qualified individuals with disabilities." *Id.* (citing 28 C.F.R. § 35.130(d)).

Plaintiffs' Amended Complaint centers on the repeated isolation, unlawful restraint, and unjustified segregation of schoolchildren with disabilities inflicted by Defendants. This conduct has nothing to do with education and is instead disability discrimination. Opposition 24–27. As with *Georgia Advocacy Office*, Defendants' conduct implicates Title II of the ADA and supports an *Olmstead* claim arising from unlawful segregation. Opposition 18–19, 25–27. The reach of *Georgia Advocacy Office* also rejects Defendants' claim that the *Olmstead* Court's "holding was modest." *See* Def.s' Reply in Supp. of Mot. to Dismiss, Feb. 21, 2020, ECF No. 25, 13–14.

In *S.C. v. Round Rock Independent School District*, No. A-19-CV-1177-SH, 2020 WL 1446857, at *4, *9 (W.D. Tex. Mar. 25, 2020), attached hereto as Exhibit D, the court rejected a 12(b)(1) motion against plaintiff's ADA and Section 504 claims on the grounds of failure to exhaust as a jurisdictional bar, ruling that "exhaustion of administrative remedies under the Rehabilitation Act and ADA is not a jurisdictional requirement[.]" The *S.C.* Court concluded that the complaint focused on harm caused by the failure to provide accommodations for plaintiff's medical condition, *i.e.,* Anorexia Nervosa, and, thus, the gravamen of the complaint was "simple discrimination, irrespective of the IDEA's FAPE obligation." *Id.* at *7 (citations omitted). As

---

[1] *See generally Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581 (1999).

4

such, exhaustion was not required. *Id.* This ruling supports Plaintiffs' contention that the injury at issue, not the location of that injury, is the determinative factor in the court's inquiry.

In *A.K.B. By & Through Silva v. Independent School District 194*, No. 19-CV-2421 (SRN/KMM), 2020 WL 1470971, at *2 (D. Minn. Mar. 26, 2020), attached hereto as Exhibit E, a school district was sued for "fail[ing] to formulate a [] plan to address" a child's asthma "and [the] need for accommodations[.]" The complaint alleged that plaintiff suffered "prolonged oxygen deprivation," leading to "extensive, permanent brain damage." *Id.* Aptly analyzing the complaint, the court rejected an attack that the setting of these acts negated an ADA claim: "[T]he District is only the 'location' of the discrimination alleged. . . . [Plaintiffs] could have brought essentially the same Complaint if the alleged conduct occurred at another public facility . . . [and] the District's adult employees, could have pressed essentially the same grievance against the District." *Id.* at *6. Thus, the action could be maintained without IDEA exhaustion.

In *A.F. by & through Fournier v. Portland Public School District*, No. 3:19-CV-01827-BR, 2020 WL 1693674, at *3–4 (D. Or. Apr. 7, 2020), attached hereto as Exhibit F, the court ruled that an autistic student's claims that a school refused "to accommodate him by denying him access to medically necessary mental-health care while at school" were governed by the ADA because "[t]he lack of treatment dramatically impairs [p]laintiff's ability to function in any setting, including school." Thus, the "substance of [p]laintiff's claim [wa]s the need to receive mental-health treatment in the educational setting rather than mere access to educational services . . . [which] is not subject to the exhaustion requirements of the IDEA." *Id.* at *4.

In *United States v. State of Georgia*, No. 1:16-CV-03088-ELR, slip op. at 2 (N.D. Ga. May 13, 2020), attached hereto as Exhibit G, the court denied defendants' motion to dismiss concerning claims that the State of Georgia discriminated against "thousands of public school

students with behavior-related disabilities" in violation of Title II of the ADA by "unnecessarily segregating them, or by placing them at serious risk of segregation in a separate and unequal educational program known as the Georgia Network for Educational and Therapeutic Support Program[.]" The complaint was sufficient because it alleged that "such isolation and segregation of these students violates the ADA's mandate that public entities 'administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities.'" *Id.* IDEA exhaustion was not required because "like many Title II violation cases, Plaintiff alleges far more than simply the denial of a FAPE . . . ." *Id.* at 19. Thus, "systematic discriminatory practices which result in unlawful stigmatization, deprivation of advantages that come from integrated learning environments, denial of access to public institutions, and unjustified segregation and discrimination of children" with disabilities are the types of claims that go "much further" than the mere denial of FAPE. *Id.* at 19–20.

In *Piotrowski on behalf of J.P. v. Rocky Point Union Free Sch. Dist.*, No. 18CV6262RRMSIL, 2020 WL 2836792, at *3–4 (E.D.N.Y. May 28, 2020), attached hereto as Exhibit H, a student sued a school district under the ADA, Section 504, and 42 U.S.C. § 1983 for failure to accommodate his Type 1 diabetes. The court summarily rejected defendants' argument that the case should be dismissed for failure to exhaust under the IDEA, finding "that the claims that [plaintiff] advances are beyond the reach of the IDEA's exhaustion requirement" because "the gravamen of the complaint concerns [plaintiff's] discriminatory discipline and suspension from school, which extends well beyond denial of a FAPE." *Id*. at 7.

In *Clines v. Special Admin. Bd. Transitional School District of the City of St. Louis,* No. 4:18-CV-00153-NAB, 2020 WL 3036053, at *1 (E.D. Mo. June 5, 2020), attached hereto as Exhibit I, plaintiff, an autistic child, kicked a school instructor. After the instructor implemented

unsuccessful de-escalation procedures, he threw the child to the ground with such force as to break bone and cause a dislocated shoulder. *Id.* The child sued alleging violations of 42 U.S.C § 1983. Rejecting FAPE-based arguments in support of dismissal, the court ruled that "[t]he crux" of the allegations was "not [the defendant's] failed attempts to use de-escalation techniques," but, rather, defendant's "'forceful and violent action.'" *Id*. at 5. Because plaintiff "could have brought a claim for this conduct had it occurred at a non-school public facility, and an adult employee or visitor of the school could similarly bring claims for redress of the resulting injuries," the court found that the IDEA exhaustion requirement did not apply. *Id*.

  These cases strongly support Plaintiffs' Opposition to Defendants' Motion to Dismiss. Their Amended Complaint is not a plea for educational services that were denied to an individual student; it alleges severe, persistent, systemic physical and emotional abuse, forced isolation, segregation, and disparate treatment as a response to disability-related behavior. Simply put, adult enforced physical restraint, isolation, seclusion, and segregation do not enhance the educational setting, they deny and denigrate its existence.

  The fact that this is discrimination based on disability is not a speculative twist by Plaintiffs to avoid exhaustion. The behavior at issue is a violation of the basic dignity of students with disabilities. It is not isolated. The U.S. Government Accountability Office ("GAO") cited widespread underreporting of restraint and seclusion in public schools. *See* U.S. Gov't Accountability Off., GAO-20-345, K-12 Education: Education Needs to Address Significant Quality Issues with Its Restraint and Seclusion Data (Apr. 2020), https://www.gao.gov/assets/710/706269.pdf [hereinafter, "2020 GAO Report"], attached hereto as Exhibit J. The systemic failure to document and report restraint and seclusion, "is particularly concerning because . . . students with disabilities [] are disproportionately affected" by those

practices. *Id.* at 1; *see also id.* at 13 ("[D]ata show[s] that restraint and seclusion disproportionately affect students with disabilities and its data quality review showed that substantial portions of districts of all sizes inaccurately reported zeros."). The GAO noted that "about one-third of large and one-fourth of very large districts reported zero incidents" of restraint and seclusion during the 2015-2016 school year. *Id.* at 12. It determined that such deceptive practices "have consequences for the students who are restrained or secluded in school and whose restraint or seclusion goes un-reported." *Id.* at 29. Indeed, "[w]hen federal data are misreported to the public, it undermines confidence in that data and fails to provide decision makers with reliable information on which to make informed policy decisions to protect students." *Id.*

The 2020 GAO Report merely confirms what Plaintiffs allege: (1) students with disabilities are disparately impacted by Defendants' unlawful use of restraint and seclusion, Opposition 26–27; (2) the failure to accurately report instances of restraint and seclusion is systemic and, thus supports claims under the ADA, Section 504, and 42 U.S.C. § 1983 that need not be exhausted under the IDEA, Opposition 12–15, 23–30, *see also* 2020 GAO Report at 2 n.3; and (3) Plaintiffs, including Organizational Plaintiffs, have standing to attack these practices, Opposition 17–23. Plaintiffs' Amended Complaint alleges this very harm, *i.e.,* the failure of the Fairfax County Public Schools—the nation's tenth largest school district—to document and properly report the extent of the application of these odious procedures and to falsely report zero instances of their use to the Federal government. Opposition 28–29.

## II. Defendants' Supplemental Authorities

In response to Plaintiffs' notice, Defendants cited six authorities they contend support their Motion to Dismiss. *See* Ex. A. All such reliance is misplaced.

*A.L. by & through Lee v. Clovis Unified School District*, 798 F. App'x 163 (9th Cir. 2020), attached hereto as Exhibit J, is unpublished and lacks factual description or analysis. The opinion merely states that appellants alleged "segregation from the school's general population" and sought policy changes "when crafting a FAPE." *Id.* at 164. The Ninth Circuit noted the IDEA claims were "settled . . . without receiving an administrative decision . . . " *id.*, but added little more.[2] In the instant case, the relief requested is not obtainable through the IDEA. Opposition 13–15.

*Angela B. v. Dallas Independent School District*, No. 3:20-CV-0188-D, 2020 WL 2101228, at *1 (N.D. Tex. May 1, 2020), attached hereto as Exhibit K, is also inapposite. That case involved the adoption of specific educational plans, *see id.* at *4, whereas here, Plaintiffs seek an end to systemic discriminatory practices that include physical assault, restraint, isolation, segregation, and disparate treatment against students because of their disabilities. Opposition 2, 10, 25–27.

*Sorah v. Tipp City Exempted Village School District Board of Education*, No. 3:19-CV-120, 2020 WL 1242882, at *1 (S.D. Ohio Mar. 16, 2020), attached hereto as Exhibit L, involved a student with disabilities who was suspended for possession of "tobacco and a vape pen," and alleged a failure to provide "visual supports or frequent checks of his comprehension" in accordance with his Section 504 plan. The court determined the plaintiff's claims involved a denial of FAPE because they asserted a failure to follow IDEA requirements governing

---

[2] The underlying district court opinion was available to Defendants at the time they filed their Motion to Dismiss. They did not avail themselves of or refer to it in earlier briefing, and it is irrelevant to the issues presented in this case concerning Plaintiffs' allegations of systemic abuse, isolation, and segregation in violation of Title II's integration mandate.

suspension of individuals with disabilities. *Id.* at *5. The plaintiff was never abused, held down, placed in isolation for several minutes, or segregated from the general education population.

*T.R. v. School District of Philadelphia*, No. CV 15-4782, 2020 WL 2100945, at *1 (E.D. Pa. Apr. 30, 2020),[3] attached hereto as Exhibit M, is distinguishable because it involves allegations that the school district failed to provide "translation and interpretation services . . . ." Such services, the *T.R.* court found, are inextricably intertwined with a student's right to FAPE. While the failure to provide translation services is tied to FAPE, physical abuse and disparate treatment based on a students' disabilities is not.

*Donohue v. Lloyd*, No. 18-CV-9712 (JPO), 2020 WL 2834207, at *1 (S.D.N.Y. June 1, 2020), attached hereto as Exhibit N, is also inapposite. *Donohue* involved alleged discriminatory conduct and retaliation "during a hearing regarding [a student's] placement for the 2018-2019 school year." *Id.* The harm arose from the denial of rights under the IDEA, not the ADA. *See* Opposition 12.

*J.F. v. San Diego County Unified School District*, No. 19-CV-2495-CAB-LL, 2020 WL 1692534, at *1 (S.D. Cal. Apr. 7, 2020),[4] attached hereto as Exhibit O, involved IDEA claims alleging that plaintiff failed to receive a 1:1 aide this denied him "a proper education." *Id.* This is an educational service, properly related to the IDEA itself, and is irrelevant to the systemic problems alleged here.

## CONCLUSION

For the reasons set forth above and in Plaintiffs' Opposition, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss.

---

[3] *T.R.* is currently on appeal to the United States Circuit Court of Appeals for the Third Circuit.
[4] *J.F.* is currently on appeal to the United States Circuit Court of Appeals for the Ninth Circuit.

Dated: July 1, 2020

    Respectfully submitted,

    /s/ Kevin Byrnes
    Kevin E. Byrnes, VSB No. 47623
    Fluet Huber + Hoang, PLLC
    1751 Pinnacle Drive
    10th Floor
    Tysons, Virginia 22102
    T: (703) 590-1234
    F: (703) 590-0366
    kbyrnes@fhhfirm.com

    Regina Kline (*pro hac vice*)
    Eve L. Hill (*pro hac vice*)
    Sharon Krevor-Weisbaum (*pro hac vice*)
    Anthony J. May (*pro hac vice*)
    BROWN, GOLDSTEIN & LEVY, LLP
    120 East Baltimore Street, Suite 1700
    Baltimore, Maryland 21202
    T: (410) 962-1030
    F: (410) 385-0869
    RKline@browngold.com
    EHill@browngold.com
    SKW@browngold.com
    AMay@browngold.com

    *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 1, 2020, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record for all parties.

    /s/ Kevin Byrnes
    Kevin E. Byrnes, VSB No. 47623